Charles H. Cohen, J.
This is an action for rent for the period from March 1, 1975 to March 31, 1975 under a written lease extending to 1976, made between plaintiff, as landlord, and defendant, as tenant, with respect to residential premises. The defense is based upon the claim that for a substantial *296 period of time noise emanating from another apartment in the building was so great that defendant could not continue to reside in his apartment; and on March 18, 1975, he moved out. Defendant contends that he is no longer liable for rent under the lease and that any liability for rent for the month of March, 1975 is covered by the security in the amount of one month’s rent, held by plaintiff.
While defendant testified concerning the loud and continuous noise caused by tenants in another apartment, plaintiff did not present any evidence to the contrary and did not explain his failure to do so. The testimony of the defendant was positive, direct and credible. Under these circumstances, that uncontroverted testimony is to be taken most strongly against the party who was in a position to contradict it . but failed to do so. (Noce v Kaufman, 2 NY2d 347, 353; Laffin v Ryan, 4 AD2d 21; Heissenbuttel v Comnas, 14 Misc 2d 509, 511.) The court finds that this noise was so intense and so long-lasting as to render the apartment uninhabitable. (For a discussion of the harmful effects of excessive noise or "noise pollution”, see Rockrose Assoc. v Peters, 81 Misc 2d 971 and cases and authorities cited.) While plaintiff did not cause this noise, he did nothing at all to try to stop it although he had ample time to do so before defendant finally moved out after having complained to him about it.
With respect to a defense of constructive eviction, plaintiff relies on the general rule that one tenant in a building cannot base a claim of eviction on the acts of other tenants committed by them in their own apartments if there is no dereliction, encouragement or connivance on the part of the landlord. (Gilhooley v Washington, 4 NY 217; Trustees of Sailors' Snug Harbor v Sugarman, 264 App Div 240; Martens v Sloane, 132 App Div 114; Brick v Favilla, 51 Misc 550, affd 118 App Div 919; Seaboard Realty Co. v Fuller, 33 Misc 109.) Yet, a defense of constructive eviction has been upheld , where it was found that the conduct of another tenant resulting in continual noise deprived the tenant of the beneficial enjoyment of the apartment where the landlord, with ample notice, took no effective steps to abate the nuisance. (Home Life Ins. Co. v Breslerman, 168 Misc 117.) When this apparent modification of the general rule, based upon the failure of the landlord to take steps to abate the nuisance known to him, came to the attention of the Appellate Division in a subsequent case, the *297 response seemed somewhat equivocal. (Trustees of Sailors’ Snug Harbor v Sugarman, supra.)
It appears, then, that under the traditional rule of law relating to constructive eviction, the tenant could not succeed in this defense if the cause of the eviction resulted from acts of another tenant without any connivance on the part of the landlord, although there was some indication that this rule might be modified in a situation where the landlord had the opportunity to do something to curb the acts of the other tenant but chose not to do so. This is where the law seemed to stand for some years.
In recent years, however, traditional rules of law involved in the landlord-tenant relationship have been changing. In general, this has involved the recognition of a lease not as a conveyance of land but as a contract involving mutual obligations in which the principle of interdependency of covenants should be applied. (See Tonetti v Penati, 48 AD2d 25; Barasch v Goldbetter, NYLJ, April 15, 1975, p 17, col 5; see, also, 57 E. 54 Realty Corp. v Gay Nineties Realty Corp., 71 Misc 2d 353.) "The assault upon the citadel” surrounding the traditional concepts of the law of landlord and tenant "is proceeding in these days apace” (Ultramares Corp. v Touche, 255 NY 170, 180) in accordance with "the adaptability of our judicial system and its resilient capacity to respond to new developments” (Codling v Paglia, 32 NY2d 330, 339).
Specifically, there has been a growing recognition of the concept of an implied warranty of habitability. (See, for example, Morbeth Realty Corp. v Velez, 73 Misc 2d 996; Morbeth Realty Corp. v Rosenshine, 67 Misc 2d 325; Amanuensis, Ltd. v Brown, 65 Misc 2d 15.) As stated in Morbeth Realty Corp. v Velez (supra, p 999): "The doctrine rests upon the indisputable social reality that the apartment dweller, in exchange for the rent he pays expects not merely to occupy a certain amount of space, but also a body of goods and services which together make up a habitable apartment. * * * Accordingly, it implies in every residential tenancy a warranty by the landlord to maintain the apartment in a condition suitable for decent living. Where there has been a substantial failure by the landlord to maintain the apartment in a habitable condition, the right to receive rent is made subject to a defense comparable to that available in virtually every part of our society to one who does not receive that for which he agreed to pay.” This concept, previously accepted at the trial court level, has *298 just been recognized by the Appellate Division of the Second Department in Tonetti v Penati (supra, p 29) where it stated that: “a warranty of habitability and fitness for the purpose intended (unless specifically excluded) should be implied from the very nature of a rental for residential purposes.”
In the case at bar, the court has found that the premises became uninhabitable as a consequence of loud and continuous noise made by another tenant. We then return to the question — not quite resolved in the discussion relating to constructive eviction — as to whether the defense of uninhabitability should be sustained where the direct cause of uninhabitability is another tenant and not the landlord.
The whole concept of the implied warranty of habitability rests on the undertaking of the landlord that the premises will be habitable. If it is not, then the tenant is entitled to relief even if the landlord did not cause the uninhabitability, at least in situations where, as here, the landlord could have taken steps to try to make the premises habitable by trying to restrain the loud and continuous noise made by the other tenant but chose to do nothing at all. The court finds that there was a breach of the implied warranty of habitability so that defendant’s liability for rent terminated when he quit the premises. (Tonetti v Penati, supra.)
While it is unnecessary to consider whether there was a constructive eviction (see Tonetti v Penati, supra, n 1), it is interesting to note that in the recent case of Rockrose Assoc. v Peters (81 Misc 2d 971) involving an office lease requiring soundproofing by the landlord, the court found that there was a constructive eviction where continuing noise from a neighboring tenant interfered with the relationship of defendant, a psychotherapist, with her patients.
The court directs judgment in favor of defendant against plaintiff.