151 N.J. Super. 168 (1977)
376 A.2d 611
MILLBRIDGE APARTMENTS, PLAINTIFF,
v.
FREDERICK LINDEN AND MERLE LINDEN, DEFENDANTS.
Superior Court of New Jersey, District Court  Camden County.
April 27, 1977.
*170 Mr. Gregory Saputelli, for plaintiff (Messrs. Saputelli and Saputelli, attorneys).
Mr. Michael Taylor for defendants (Messrs. Taylor, Kotlikoff and Schwartz, attorneys).
WEINBERG, J.D.C.
The novel issue raised by defendants in this summary dispossess action is whether repeated loud noise can constitute a breach of the implied warranty of habitability in a residential tenancy.
Defendants, residents in a garden-type apartment complex, complained to the landlord on a number of occasions that their upstairs neighbors were making extremely loud noises. The level of the noise was so loud that on one occasion, defendant was unable to study. The landlord testified that on two or three occasions it had requested the upstairs residents to cease the loud noises.
Defendants contend that these efforts by the landlord were unsuccessful and therefore they began in February 1977 to escrow their rent in an effort to compel the landlord to bring a summary dispossess action against the disorderly neighbors.[1] Rather than pursuing that course of action, plaintiff commenced this action against defendants to obtain possession of the premises.
The court has concluded that under certain circumstances and conditions, repeated loud noise suffered by a *171 residential tenant, which could have been cured by a landlord, can be a defense to a dispossess action under the rubric of the warranty of habitability.
There have been numerous statements made by the courts of this State regarding the concept of habitability. However diverse, these declarations all arise from a common source, i.e., the doctrine of constructive eviction. Constructive eviction was an early common law remedy for tenants who, because of breach of a substantial leasehold condition, were deemed "evicted" and hence no longer under an obligation to pay rent.[2] The concept of habitability, an implied covenant in every residential lease, was conceived to mitigate the harshness of the constructive eviction doctrine which required the tenant to vacate the premises in order to present this defense.
Returning to the source of the doctrine, constructive eviction is defined in Reste Realty Corp. v. Cooper, 53 N.J. 444 (1969) as follows:
Under this rule any act or omission of the landlord or of anyone who acts under authority or legal right from the landlord * * * which renders the premises substantially unsuitable for the purpose for which they are leased, or which seriously interferes with the beneficial enjoyment of the premises * * * constitutes a constructive eviction of the tenant. [at 457; emphasis supplied; citations omitted]
Residential tenants expect to live within reasonable boundaries of quiet. Continual noise of a loud nature infringes upon those expectations and makes one's premises "substantially unsuitable for the purpose for which they are leased," i.e., ordinary residential living. Accordingly, this court holds that noise may constitute a constructive eviction and legally justify a tenants vacating.
It follows, a fortiori, that if a condition is substantial enough to constitute a constructive eviction it may also be *172 a breach of habitability. As stated by our Supreme Court in Marini v. Ireland, 56 N.J. 130 (1970):
Our courts have on a case by case basis held various lease covenants and covenants to pay rent as dependent and under the guise of a constructive eviction have considered breach of the former as giving the right to the tenant to remove from the premises and terminate his obligation to pay rent. See, McCurdy v. Wyckoff, 73 N.J.L. 368 (Sup. Ct. 1906); Weiler v. Pancoast, 71 N.J.L. 414 (Sup. Ct. 1904); Higgins v. Whiting, 102 N.J.L. 279 (Sup. Ct. 1925); Stevenson Stanoyevich Fund v. Steinacher, 125 N.J.L. 326 (Sup. Ct. 1940). It is of little comfort to a tenant in these days of housing shortage to accord him the right, upon a constructive eviction, to vacate the premises and end his obligation to pay rent. Rather he should be accorded the alternative remedy of terminating the cause of the constructive eviction where as here the cause is the failure to make reasonable repairs. See, Reste Realty Corp. v. Cooper, supra, footnote 1, 53 N.J. pp. 462, 463. [at 146]
While Marini discussed habitability in terms of "repairs" to vital facilities, Berzito v. Gambino, 63 N.J. 460 (1973), expanded the concept of breach of habitability to include all defects of a vital nature regardless of whether they be tangible or not.
The criteria considered significant by the court in Berzito include:
1. Has there been a violation of any applicable housing code or building or sanitary regulations?
2. Is the nature of the deficiency or defect such as to affect a vital facility?
3. What is its potential or actual effect upon safety and sanitation?
4. For what length of time has it persisted?
5. What is the age of the structure?
6. What is the amount of the rent?
7. Can the tenant be said to have waived the defect or be estopped to complain?
8. Was the tenant in any way responsible for the defective condition?
This list is intended to be suggestive rather than exhaustive. Each case must be governed by its own facts. The result must be just and fair to the landlord as well as the tenant. [at 470]
This court would suggest an additional criterion for consideration, namely, is the condition one to which the tenant *173 should reasonably be expected to accommodate as part of everyday living in an area populated as the premises in question?
A tenant in a garden-type apartment complex should not be expected to tolerate repeated loud noise as an ordinary living condition.
Berzito also established the principle that if there is a breach of habitability, the tenant is entitled to an abatement in the amount of rent due. Therefore, it is consistent with established case law to hold that repeated loud noise may constitute a breach of the covenant of habitability and afford defendants the possibility of an abatement.
The court, in considering the testimony as to the actual effect of the repeated loud noise upon the tenants' utilization of the premises in this litigation, does not feel that defendants are entitled to an abatement. The testimony taken in open court established that although there was loud noise on occasions, it was excessive to the point of affecting habitability only on one occasion. As such, it would be an injustice to the landlord to give an abatement in this instance. This court repeats that in order to establish the defense of habitability, the loud noise condition must be repetitious and affect the tenants in a detrimental manner. In addition, it must be such that the tenant should not reasonably be expected to accommodate such noise as part of everyday living within a residential atmosphere.
Accordingly, the monies on deposit with the court are to be released and turned over to the landlord, and the case is hereby dismissed.
NOTES
[1] One of the terms included in all Millbridge leases states:

No lessee shall make or permit any disturbing noises to be made in the building by himself, members of his family * * * nor do or permit anything to be done that will interfere with the rights, comforts or convenience of the other tenants.
[2] See e.g., Steward v. Childs Co., 86 N.J.L. 648 (E. & A. 1914); Higgins v. Whiting, 102 N.J.L. 279 (Sup. Ct. 1926); McCurdy v. Wyckoff, 73 N.J.L. 368 (Sup. Ct. 1906).