179 N.J. Super. 286 (1981)
431 A.2d 851
ALEXANDER GOTTDIENER AND ERNEST GOTTDIENER, PARTNERS, T/A OAKWOOD VILLAGE ASSOCIATES, PLAINTIFFS-APPELLANTS,
v.
PAUL N. MAILHOT AND JANET M. MAILHOT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1981.
Decided June 10, 1981.
*288 Before Judges MICHELS, KOLE and ARD.
Philip B. Vinick argued the cause for appellants (Weltchek, Prupis & Ritz, attorneys).
David C. Pennella argued the cause for respondents (Hugh E. DeFazio, Jr., attorney).
The opinion of the court was delivered by KOLE, J.A.D.
The primary question on this appeal is whether defendants, former tenants in plaintiffs' apartment complex, may invoke the remedy of constructive eviction by reason of plaintiffs' claimed failure to take sufficient measures to protect defendants from excessively noisy and unruly neighboring tenants.
Plaintiffs sought rent (at the rate of $400 a month) for the months of September, October and November 1979, plus late charges and additional sums to repair and restore defendants' apartment. Defendants denied liability for rent for the months in question principally because plaintiffs' breach of the covenant of quiet enjoyment amounted to a constructive eviction. Defendants also counterclaimed for double the amount of their security deposit, pursuant to N.J.S.A. 46:8-21.1.
The matter was tried before Judge Gascoyne, sitting without a jury. The proofs showed that defendants originally became tenants in Oakwood Village, a 516-unit apartment complex, in December 1975, and had renewed their tenancy through January *289 31, 1980. Defendants experienced no problems during their tenancy until the fall of 1978, when new tenants moved into the apartment immediately beneath defendants. On several occasions in December 1978 and January 1979 defendants complained of "intolerable noise" coming from the downstairs apartment, such as slamming doors, yelling and screaming children, and excessive volume from the television and radio after 10 p.m. Plaintiff Alexander Gottdiener, one of the partners who owned Oakwood Village, expressed sympathy with defendants' plight and made some efforts to effect a resolution of the conflict between defendants and their neighbors. These efforts were not successful and, according to Mr. Mailhot, the neighbors began a campaign of harassment and retaliation. He claimed that in late January 1979 someone from the apartment below had maliciously damaged his vehicle, which he kept in a garage available only to defendants, plaintiffs and the downstairs neighbors.
Defendants brought this incident to the attention of Gottdiener and again requested plaintiffs to take some measures to resolve the problem. Gottdiener responded with a suggestion that defendants and their neighbors amicably settle the dispute, but a subsequent meeting proved fruitless. According to Mailhot, one of the downstairs tenants became very angry and threatened defendants.
Defendants began to look for another place to live in early May, and sometime in June entered into a contract to purchase a home. By letter dated June 29, 1979 they notified plaintiffs that they intended to terminate the tenancy as of August 31. The letter of termination stated that defendants had been "continually harassed and intimidated" by the downstairs tenants and that they believed that plaintiffs' failure to correct the situation constituted a "breach of contract." Gottdiener replied that he still hoped that the matter could be amicably solved, and he suggested that defendants move into another building. Defendants declined the offer and vacated their apartment in late August 1979. Plaintiffs procured another tenant effective December *290 and shortly thereafter notified defendants of the disposition of their security deposit. Plaintiffs then brought this action for rent for the months of September, October and November, and the other charges, minus defendants' security deposit, which plaintiffs retained.
Judge Gascoyne found that, while he initially believed that defendants were "hypersensitive" to noise, his analysis of the proofs convinced him that the conduct of the downstairs neighbors constituted a "substantial interference" with defendants' quiet enjoyment of the premises. He found that one of the downstairs neighbors had vandalized Mailhot's automobile. He reasoned that excessive noise, like flooding or roach infestation, can make rented premises unsuitable for the purpose for which the premises were leased. He also found that defendants had vacated their apartment within a reasonable time. Thus, he held that plaintiffs were not entitled to rent for the months of September, October and November. A judgment was entered dismissing the complaint with prejudice and awarding $548.70 to defendants on their counterclaim. Plaintiffs appeal.
Plaintiffs contend that a landlord has no duty to evict one tenant in order to eliminate a "questionable" disturbance by that tenant of another tenant, and that defendants were not constructively evicted, since the landlord diligently tried to alleviate friction between them and their neighboring co-tenants.
The law of landlord and tenant, including that relating to constructive eviction, has undergone considerable change in recent years. In Reste Realty Corp. v. Cooper, 53 N.J. 444, 456-457 (1969), the court stated that where there is a covenant of quiet enjoyment, whether expressed or implied, which is breached substantially by the landlord, the doctrine of constructive eviction is available as a remedy for the tenant; and that any act or omission of the landlord or anyone acting under his authority which renders the premises substantially unsuitable for the purpose for which they are leased, or which seriously *291 interferes with the beneficial enjoyment of the premises, is a breach of that covenant and constitutes a constructive eviction of the tenant.
In Millbridge Apartments v. Linden, 151 N.J. Super. 168 (Cty. D.Ct. 1977), the court properly held that the Reste principle relating to constructive eviction could be applied to a situation similar to that before us. There defendants-tenants frequently complained to their landlord that their neighbors were extremely loud. When the landlord's efforts to correct the problem were unsuccessful, the tenants began withholding their rent. In the landlord's ensuing action for possession based on nonpayment of rent, the tenants contended that the landlord's failure to correct the problem constituted a breach of the covenant of habitability.
Judge Weinberg stated that "repeated loud noise suffered by a residential tenant, which could have been cured by a landlord, can be a defense to a dispossess action under the rubric of the warranty of habitability." 151 N.J. Super. at 170-171. He said:
Residential tenants expect to live within reasonable boundaries of quiet. Continual noise of a loud nature infringes upon those expectations and makes one's premises "substantially unsuitable for the purpose for which they are leased," i.e., ordinary residential living. Accordingly, this court holds that noise may constitute a constructive eviction and legally justify a tenant's vacating. [at 171]
Since noise may constitute a constructive eviction, the court determined that excessive noise could also constitute a breach of the covenant of habitability. Id. at 171-172.
We agree with the reasoning of Millbridge Apartments v. Linden. A number of recent cases from other jurisdictions have recognized that a landlord may constructively evict a tenant by failing to prevent other tenants from making excessive amounts of noise. Blackett v. Olanoff, 371 Mass. 714, 358 N.E.2d 817 (Sup.Jud.Ct. 1977); Colonial Court Apartments, Inc. v. Kern, 282 Minn. 533, 163 N.W.2d 770 (Sup.Ct. 1968); Cohen v. Werner, 82 Misc.2d 295, 368 N.Y.S.2d 1005 (Civ.Ct. 1975), aff'd 85 Misc.2d 341, 378 N.Y.S.2d 868 (App.Term 1975). Accord Restatement, *292 Property 2d (Landlord and Tenant), § 6.1, comment d at 226 (1977).
Furthermore, regulations promulgated pursuant to the Hotel and Multiple Dwelling Law, N.J.S.A. 55:13A-1, et seq., support the reasoning of Millbridge Apartments v. Linden, supra. These regulations establish a standard of conduct for landlords and are "available as evidence for determining the duty owed by landlords to tenants." Trentacost v. Brussel, 82 N.J. 214, 230 (1980). N.J.A.C. 5:10-19.4(a)(2) states that the owner of a multiple dwelling "shall be responsible for avoiding, eliminating or abating any noises ... arising out of the use or occupancy of the premises which shall constitute a nuisance that is harmful or potentially harmful to the health and well-being of persons of ordinary sensitivity occupying or using the premises."
We hold that in order to justify early termination of the lease, or for that matter an abatement of rent, the tenant must show that the noise or conduct of a cotenant made the premises substantially unsuitable for ordinary residential living and that it was within the landlord's power to abate the nuisance. The test is objective; the noise or disruptive conduct "must be such as truly to render the premises uninhabitable in the eyes of a reasonable person." Berzito v. Gambino, 63 N.J. 460, 469 (1973).
Unquestionably plaintiffs had the power to correct the problem. A good cause for evicting a residential tenant is that the "person has continued to be, after written notice to cease, so disorderly as to destroy the peace and quiet of the occupant or other tenants living in said house or neighborhood." N.J.S.A. 2A:18-61.1(b). The landlord may bring a summary dispossess action against such an unruly tenant by giving only three days' notice prior to the institution of the action. N.J.S.A. 2A:18-61.2(a). In addition, had the downstairs tenant violated any rules and regulations or lease covenants respecting noise, the landlord had the option of bringing a dispossess action under either N.J.S.A. 2A:18-61.1(d) or (e).
*293 There is no merit to plaintiffs' argument that the conduct of the downstairs neighbors was not so serious as to constitute a substantial interference with defendants' peaceful enjoyment of the premises, or that plaintiffs did all that reasonably could be expected of them to remedy such conduct. What amounts to a constructive eviction is a question of fact. Weiss v. I. Zapinsky, Inc., 65 N.J. Super. 351, 357 (App.Div. 1961). We find sufficient credible evidence in the record as a whole to support the trial judge's findings and conclusions regarding the nature and extent of the disturbance of defendants' enjoyment of the premises and the constructive eviction of defendants by reason thereof. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974).
Plaintiffs further contend that even assuming that they breached the covenant of quiet enjoyment by not abating the noise, defendants waived their right to terminate the lease and abandon the premises because they failed to take such action within a reasonable time after the right to terminate came into existence. As stated in Reste Realty Corp. v. Cooper, supra:
... What constitutes a reasonable time depends upon the circumstances of each case. In considering the problem courts must be sympathetic toward the tenant's plight. Vacation of the premises is a drastic course and must be taken at his peril. If he vacates, and it is held at a later time in a suit for rent for the unexpired term that the landlord's course of action did not reach the dimensions of constructive eviction, a substantial liability may be imposed upon him. That risk and the practical inconvenience and difficulties attendant upon finding and moving to suitable quarters counsel caution. [53 N.J. at 461]
Adequate credible evidence in the record supports the conclusion that defendants waited a reasonable time in order to determine whether plaintiffs would solve the problem, and left only after it was apparent that plaintiffs would not take any further measures. There was thus no waiver of their right to terminate the lease.
We find no merit in plaintiff's contention that the trial judge erred in disallowing certain deductions from defendants' security deposit, such as "assorted cleaning charges," "stain and spot damages," and charges for rerenting and painting. The record supports the judge's findings that the deductions in *294 question were either not authorized by the lease (see N.J.S.A. 46:8-21.1), or that the alleged damage represented nothing more than reasonable wear and tear. See Heyman v. Linwood Park, 41 N.J. Super. 437, 442 (App.Div. 1956).
Affirmed.