1998-NMCA-094

963 P.2d 542

**CASA BLANCA MOBILE HOME PARK, Plaintiff–Appellee,**

v.

**Barbara G. HILL, Defendant–Appellant.**

and

**FAIR PLAZA ASSOCIATES, Plaintiff–Appellee,**

v.

**Shannon KEARNS, Defendant–Appellant.**

**No. 18389, 18264.**

Court of Appeals of New Mexico.

May 11, 1998.

Certiorari Denied July 1, 1998.

Walter L. Reardon, Jr., Watrous & Reardon, Albuquerque, for Appellee Casa Blanca Mobile Home Park.

Angelica Anaya–Allen, Legal Aid Society of Albuquerque, Inc., Albuquerque, for Appellant Barbara Hill.

Thomas A. Domme, Robin A. Goble, Miller, Stratvert & Torgerson, P.A., Albuquerque, for Appellee Fair Plaza Associates.

James Orgass, Legal Aid Society of Albuquerque, Inc., Albuquerque, for Appellant Shannon Kearns.

## OPINION

HARTZ, Chief Judge.

{1} These two appeals, which we have consolidated for opinion and disposition, raise the same question under New Mexico's Uniform Owner–Resident Relations Act (UORRA), NMSA 1978, Sections 47–8–1 through 51 (1975, as amended through 1995): Does the Act bar an owner's otherwise proper action for possession of the premises after termination of a month-to-month residency if the owner is retaliating against the resident for complaining about noisy neighbors? Agreeing with the courts below that the Act creates no such bar, we affirm.

## BACKGROUND

{2} Barbara Hill was a resident of Casa Blanca Mobile Home Park. Shannon Kearns was a resident of an apartment owned by Fair Plaza Associates. Both Hill and Kearns

(Residents) had month-to-month rental agreements with the property owners. Each owner issued its Resident a thirty-day notice of termination in accordance with Section 47–8–37 of the UORRA and then filed a petition for restitution with the Bernalillo County Metropolitan Court in accordance with Section 47–8–42. Each Resident answered the petition by asserting that the action for possession constituted retaliation for the exercise of her rights under the UORRA. The Residents contended that the Act therefore barred the actions and that they were entitled to damages. Both owners prevailed in metropolitan court, and those judgments were sustained on appeal to the Bernalillo County District Court. The two appeals before us are from the orders of affirmance entered by the district court.

{3} In Hill's case the record indicates that she began complaining about the noise level of her neighbor's television in May 1996. The manager of the mobile home park testified that on fifteen occasions Hill awakened him between 12:30 and 1:00 a.m. and asked him to investigate the alleged disturbance, but only on two occasions did he agree that the television may have been too loud. On those occasions he informed the neighbors to lower the volume. During the day on July 25, 1996 Hill complained to the manager about noise in the mobile home park. The manager considered the complaint to be frivolous and shortly thereafter served Hill with a thirty-day notice that the residency would be terminated.

{4} Kearns was the sole witness at the trial of her dispute with Fair Plaza. She testified that she had been having problems with noisy upstairs neighbors for several months and had complained about them to the manager of the apartments. After delivering two letters of complaint to the manager on Saturday, April 13, 1996, she received a thirty-day notice of termination on Monday, April 15.

*DISCUSSION*

{5} Section 47–8–39 of the UORRA states:

**Owner retaliation prohibited.**

A. An owner may not retaliate against a resident who is in compliance with the rental agreement and not otherwise in violation of any provision of the [UORRA] by increasing rent, decreasing services or by bringing or threatening to bring an action for possession because the resident has within the previous three months:

(1) complained to a government agency charged with responsibility for enforcement of a minimum building or housing code of a violation applicable to the premises materially affecting health and safety;

(2) organized or become a member of a residents' union, association or similar organization;

(3) acted in good faith to exercise his rights provided under the [UORRA], including when the resident makes a written request or complaint to the owner to make repairs to comply with the owner's obligations under Section 47–8–20 NMSA 1978;

(4) made a fair housing complaint to a government agency charged with authority for enforcement of laws or regulations prohibiting discrimination in rental housing;

(5) prevailed in a lawsuit as either plaintiff or defendant or has a lawsuit pending against the owner relating to the residency;

(6) testified on behalf of another resident; or

(7) abated rent in accordance with the provisions of Sections 47–8–27.1 or 47–8–27.2 NMSA 1978.

B. If the owner acts in violation of Subsection A of this section, the resident is entitled to the remedies provided in Section 47–8–48 NMSA 1978 [permitting recovery of attorney fees and a civil penalty equal to twice the monthly rent] and the violation shall be a defense in any action against him for possession.

C. Notwithstanding the provisions of Subsection A of this section, the owner may increase the rent or change services upon appropriate notice at the end of the term of the rental agreement or as provided under the terms of the rental agreement if the owner can establish that the

increased rent or changes in services are consistent with those imposed on other residents of similar rental units and are not directed at the particular resident, but are uniform.

The Residents rely specifically on paragraph (3) of Subsection A, which prohibits retaliating against a resident by bringing an action for possession "because the resident has within the previous three months ... acted in good faith to exercise his rights provided under the [UORRA]." The question before us thus becomes: Is complaining about noisy neighbors a "right provided under the UORRA"?

{6} We begin by noting that we are not aided by the fact that the UORRA is a "Uniform" act. Although based on the Uniform Residential Landlord and Tenant Act (URLTA) approved by the National Conference of Commissioners on Uniform State Laws in 1972, the UORRA has a number of unique provisions. *See generally* Carl A. Calvert, *The Uniform Owner–Resident Relations Act,* 6 N.M. L.Rev. 293 (1976) (Calvert Note). Among these is Section 47–8–39(A)(3). The URLTA section on retaliatory conduct, Section 5.101, includes provisions very similar to paragraphs (1) and (2) of Section 47–8–39(A). It also includes a provision very similar to the second part of paragraph (3) of Section 47–8–39(A): URLTA Section 5.101(a)(2) bars retaliation for complaining about violations under URLTA Section 2.104 (the counterpart to Section 47–8–20 of New Mexico's UORRA). But the URLTA contains nothing comparable to the general prohibition in Section 47–8–39(A)(3) against retaliation for exercising rights provided under the UORRA.

{7} We now turn to examining the language of the New Mexico statute. No specific provision of the UORRA gives a resident the right to complain about noisy neighbors. Indeed, no specific provision requires the owner to keep residents from being too noisy. Although the UORRA has several provisions granting a resident rights against the owner, the provisions relating to maintenance or operation of the premises appear only in Section 47–8–20(A), which states:

**Obligations of owner.**

A.  The owner shall:

(1) substantially comply with requirements of the applicable minimum housing codes materially affecting health and safety;

(2) make repairs and do whatever is necessary to put and keep the premises in a safe condition as provided by applicable law and rules and regulations as provided in Section 47–8–23 NMSA 1978;

(3) keep common areas of the premises in a safe condition;

(4) maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances, including elevators, if any, supplied or required to be supplied by him;

(5) provide and maintain appropriate receptacles and conveniences for the removal of ashes, garbage, rubbish and other waste incidental to the occupancy of the dwelling unit and arrange for their removal from the appropriate receptacle; and

(6) supply running water and a reasonable amount of hot water at all times and reasonable heat except where the building that includes the dwelling unit is not required by law to be equipped for that purpose, or the dwelling unit is so constructed that heat or hot water is generated by an installation within the exclusive control of the resident and supplied by a direct public utility connection.

Interestingly, a bill introduced in the 1995 Legislature would have added to Subsection A a paragraph (7) stating that the owner shall "assure and protect the quiet enjoyment of the premises by the resident." 1 New Mexico Forty–Second Legislature, House Bill 1077, Section 8 (1995). But that provision had been deleted by the time the bill passed the Legislature. *See* 1995 N.M. Laws, ch. 195.

{8} The Residents acknowledge that the UORRA itself does not explicitly spell out the right to complain about noise. But they contend that this right is "provided under" the Act because (1) the right is recognized by the common law and (2) the Act

incorporates by reference that proposition of common law. They rely on Section 47–8–4, which states:

> Unless displaced by the provisions of the [UORRA], the principles of law and equity, including the law relating to capacity to contract, mutuality of obligations, equitable abatement, principal and agent, real property, public health, safety and fire prevention, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy or other validating or invalidating cause supplement its provisions.

Their argument has some appeal, but it is not convincing.

{9} Under Section 47–8–4 the principles of law and equity "supplement" the UORRA. The Residents are essentially arguing that rights granted by laws supplementing the UORRA are "rights provided under the UORRA." According to this view, Section 47–8–39(A)(3) prohibits retaliation against a resident who in good faith exercises any right "provided by principles of law or equity." But if that were the case, the choice of language in Section 47–8–39(A)(3) would be peculiar. A more natural manner of expressing the meaning advocated by the Residents would be to bar retaliation against a resident exercising "rights provided by law" or "rights provided by law or equity." The Legislature's choice of language—"rights provided under the UORRA"—indicates that a different meaning was intended.

{10} The more apt reading of the language in Section 47–8–39(A)(3) is that the "rights *provided* under the UORRA" are the rights set forth in the *provisions* of the UORRA. In that regard, we note that Section 47–8–4 distinguishes between the principles of law and equity and the law set forth in the provisions of the UORRA. That section states: "Unless displaced by the provisions of the [UORRA], the principles of law and equity ... supplement its provisions." In our view, Section 47–8–39(A)(3) maintains this same distinction and does not protect the exercise of rights provided by law that merely supplements the provisions of the UORRA.

{11} Hill makes an additional argument in support of the proposition that her alleged right to complain about noisy neighbors is a right "under the UORRA." She contends that her rental agreement, through the owner's rules and regulations, gives her a "right to quiet enjoyment." We need not decide, however, whether a right contained in a rental agreement is a right "under the UORRA." We have examined the rules and regulations cited by Hill. They set forth various prohibitions and requirements that the tenants must honor. None imposes a duty on the owner. The cited provisions of the rental agreement did not confer upon the residents a right to quiet enjoyment, much less a right to complain to the owner.

■ {12} Finally, Kearns argues that even without reference to Section 47–8–4, the UORRA itself implicitly grants residents the right to complain about noisy neighbors. She points to two specific provisions of the Act. First, Section 47–8–24 sets strict limitations on the owner's access to the rented premises. Kearns apparently contends that because these restraints on the owner are traditionally encompassed by the resident's right to quiet enjoyment of the premises, *see* Calvert Note, *supra,* at 320–22, the UORRA has recognized that right in its most expansive sweep—that is, to include a right to peace and quiet (and the right to complain about its absence). The second provision she relies on is Section 47–8–22, entitled "Obligations of resident," which contains a subsection requiring the resident to "conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises." Section 47–8–22(G). Contending that the Act is "not designed to allow residents to enforce any rights, including their right of quiet enjoyment, amongst themselves," Kearns suggests that the Act implicitly imposes a duty of enforcement on the owner (and apparently a further right of the resident to complain to the owner).

■ {13} Even assuming, without deciding, that Section 47–8–39(A)(3) protects against retaliation for exercising rights *implicitly* provided by the UORRA, we disagree with Kearns' analysis. Rather than

supporting her position, the two cited sections rebut it. When a statute goes so far and no further, we infer that conduct beyond the line is not governed by the statute. We do not infer, as Kearns would have it, that because a statute takes two steps, it implicitly takes the third. *See Sanchez v. San Juan Concrete Co.*, 1997–NMCA–068, ¶ 18, 123 N.M. 537, 943 P.2d 571 (statutes are vectors, not arrows). In particular, the statutory provision imposing a duty on residents not to disturb their neighbors demonstrates that the Legislature considered the problem of noisy neighbors. It is therefore significant that the statute contains no comparable provision in Section 47-8-20, entitled "Obligations of owner," imposing on the owner a duty owed to the resident to control noisy neighbors. By imposing a duty on the resident but not the owner, the statute clearly gives the owner the power to deal with disruptive tenants but leaves the exercise of that power to the owner's discretion.

{14} This result is not senseless. Ordinarily one would expect the interest of the owner to be congruent, or at least overlap considerably, with that of the resident bothered by noisy neighbors. Particularly when leases are month-to-month, noisy residents are likely to damage severely the economic interest of the owner by making it difficult to retain and attract other tenants. The owner is well-advised to take action against the noisy resident. The Legislature may have seen no great need to impose a statutory duty on the owner to control noisy residents.

{15} Moreover, even were we to recognize a duty upon an owner to its residents to take action against other noisy residents (which may in fact arise under the common law, *see Gottdiener v. Mailhot*, 179 N.J.Super. 286, 431 A.2d 851 (1981); Restatement of Property (Second) § 6.1 and cmt. d. (1977)), it does not follow that we must recognize a defense of retaliatory eviction when a resident complains about noisy neighbors. Failure by the owner to control noisy residents may entitle the beleaguered resident to termination of the lease, abatement of rent, or damages. *See* Restatement, *supra*, § 6.1. But we have been directed to no authority, nor have we found any, that an owner must continue a lease with a resident who complains of noisy neighbors. Although the Legislature may wish to create such a right, thus far it has not, and perhaps with good reason. Even an enlightened owner may have difficulty resolving a dispute between a marginally inconsiderate resident and a marginally oversensitive neighbor, and such an owner may decide that the best solution is for one resident to depart. We note that in its order affirming the metropolitan court, the district court in Kearns' case found that Fair Plaza "was put in the untenable position of having to resolve a dispute between two tenants." Given that the cost of litigation can quickly add up to the equivalent of several months' rent, the Legislature could determine that recognition of a cause of action for retaliation because of complaints of noisy neighbors could do more harm than good—increasing rents because of increased litigation costs to owners, while doing little to improve the quality of life for residents. Such a determination would not be an anomaly. As indicated above, the National Conference of Commissioners on Uniform State Laws did not include in the URLTA the right sought by the Residents in this case.

{16} Thus, we conclude that the UORRA does not provide a right to complain about noisy neighbors. In particular, Section 47-8-39(A)(3) does not protect a resident from an otherwise proper termination of a rental agreement and action for possession motivated by retaliation for such complaints.

*CONCLUSION*

{17} We affirm the orders of affirmance of the district court in both cases on appeal.

{18} **IT IS SO ORDERED.**

PICKARD and FLORES, JJ., concur.