This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41944**

**LORRAINE HARMON,**

　　Plaintiff-Appellee,

v.

**ADAM FORTENBERRY,**

　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Matthew J. Wilson, District Court Judge**

Lorraine Harmon
Edgewood, NM

Pro Se Appellee

Robert Richards
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Chief Judge.**

**{1}** Adam Fortenberry (Tenant) appeals from the judgment and order (Order) determining that Lorraine Harmon (Landlord) was not obligated to provide electricity, pursuant to NMSA 1978, Section 47-8-20(A)(4) (1999) of the Uniform Owner-Resident Relations Act (UORRA). Tenant argues (1) Landlord had a duty to provide electricity under UORRA, (2) Landlord retaliated against Tenant such that she must pay a civil penalty under UORRA, and (3) Tenant was the prevailing party below and is therefore entitled to attorney fees. For the reasons set forth below, we reverse on the issue of Landlord's duty to provide electricity and affirm as to the civil penalty and attorney fees.

**BACKGROUND**

**{2}** Approximately five years before the events giving rise to this proceeding, Tenant, a friend of Landlord's ex-husband, moved onto Landlord's property in a camper. Over the years, Landlord became frustrated during Tenant's residency for several reasons, including because she purportedly received a notice of a zoning violation due to the accumulation of Tenant's belongings on her property. On June 28, 2023, Landlord posted a notice to terminate rental agreement on Tenant's camper. Approximately two weeks earlier, in the middle of June, Landlord cut off Tenant's electricity by turning off the breakers on her property that provided electricity to Tenant. On July 15, 2023, after using his own generator for electricity in the interim, Tenant vacated the premises due to the lack of electricity.

**{3}** On August 1, 2023, Landlord filed a petition by owner for restitution in the magistrate court for damage to the premises, repair of a fence, and the return of various tools by Tenant. On August 16, 2023, the magistrate court filed a judgment for restitution, awarding costs to Landlord in the amount of $117 and requiring Tenant to post $1,500 as an appeal bond to stay the eviction. On August 29, 2023, Tenant filed a notice of appeal to the district court, as well as a counterclaim related to the shutoff of electricity.

**{4}** During a January 3, 2024 evidentiary hearing, Landlord appeared as a self-represented litigant. The proceeding addressed Landlord's obligations to Tenant under UORRA, and Landlord and Tenant both testified. Related to this appeal, Landlord testified that Tenant moved his camper onto the property years before. She testified that there was no written rental agreement, but Tenant would mow the lawn and do other tasks benefitting the property in exchange for his stay.

**{5}** Landlord further testified that Tenant had connected an electric extension cord to an exterior building on the property to get electricity to his residence and that she turned off the breakers to cut off Tenant's utilities sometime in June. Landlord testified Tenant used a generator for electricity in June. Consistent with Landlord's representation of the timeline, Tenant testified the utilities were cut off June 16, 2023. Tenant testified that he moved out July 15, 2023, because he no longer had utilities. He estimated that the services he provided on the property were valued at $500 a month. The hearing concluded with the district court asking Landlord about scheduling time for Tenant to remove his belongings from her property. Landlord reported, "I just want him to get his stuff off my property. Everything, I don't want him leaving anything."

**{6}** The district court denied Landlord's claim for damages, her writ of restitution, and Tenant's claim for two months' rent due to Landlord disabling Tenant's access to electricity. The district court also denied Tenant's request for attorney fees, making "each party . . . responsible for their own attorney fees and costs."

**{7}** This appeal followed.

**DISCUSSION**

**I.      Landlord Had a Duty to Provide Electricity to Tenant Until the End of July 2023**

**{8}**      Tenant highlights that UORRA requires an owner "to maintain in good and safe working order and condition electrical . . . facilities . . . if any, supplied or required to be supplied by [them]." Section 47-8-20(A)(4). Responding in part to the language of the Order, Tenant argues that the fact that he provided his own electricity to the camper in the past does not allow Landlord to avoid her duty to provide electricity. Landlord asserts that she was never Tenant's landlord, and the parties never had an agreement that she would provide electricity.

**{9}**      Our Court reviews the interpretation of UORRA de novo. *See T.W.I.W., Inc. v. Rhudy*, 1981-NMSC-062, ¶¶ 4-15, 96 N.M. 354, 630 P.2d 753 (conducting a statutory interpretation to determine whether an owner is required to provide heat to a resident under UORRA). Pertinent to this appeal, Section 47-8-20(A)(4) requires an owner to "maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances, including elevators, if any, supplied or required to be supplied by [them.]"

**{10}**      Landlord testified that her now ex-husband gave Tenant permission to move onto her property while his home was in foreclosure. Given the nature of his arrival and Landlord's belief that Tenant would not stay long, she did not have him sign a lease, but she acknowledged that Tenant would do things around the home in exchange for his stay. This informal arrangement is sufficient to constitute an agreement to occupy a site on owner's land. UORRA therefore applies to this arrangement between an owner and a resident. *See* § NMSA 1978, 47-8-3(M), (R), (Q) (1999, amended 2025) (defining "owner, "resident," and "rental agreement"). Landlord also testified that she was aware Tenant's camper had accessed electricity by way of an extension cord, because sometime before her ex-husband left in 2020, Landlord noticed that her electrical bill was higher, investigated, and found the buried extension cord running from an outbuilding to the camper. The district court determined "[the requirement to provide] electricity is not applicable because [Tenant] provided his own electricity after [Landlord] turned off the electricity to [Tenant's] dwelling unit." We disagree and explain.

**{11}**      Because Landlord knew that Tenant was taking electricity and continued to supply electricity for some time, the plain language of Section 47-8-20(A)(4) obligated Landlord to maintain the supply of electricity in good working order during the term of the tenancy. Even if no "rental agreement" included the electrical connection, the parties' ongoing behavior supports a conclusion that Landlord knowingly supplied electricity. Therefore, Section 47-8-20(A)(4) applied to require the electrical connection to be maintained by Landlord. No exemption applies here to relieve Landlord of this obligation. *See Rhudy*, 1981-NMSC-062, ¶¶ 2, 12-15 (holding that even where there was an oral agreement to lease property, the owner was nevertheless required "to provide reasonable heat unless [the owner] . . . could show some specific law

exempting them from the requirement" and that "[Section] 47-8-20(A)(2) through (6) remain as minimum standards if there is no applicable [housing or building] code"). This obligation remains even in the absence of a written lease between the parties. *See Rhudy*, 1981-NMSC-062, ¶ 2. Further, this obligation remains even if a resident is able to provide their own electricity after an owner cuts off access otherwise—as the record indicates occurred here—or if the owner has simply supplied the electricity to the premises despite the lack of "formal permission"—as the district court found. Because Tenant was residing on Landlord's property and exchanging services for his stay and Landlord knowingly supplied electrical access for a period of years, Landlord was required to maintain the supply of electricity to Tenant until the eviction was effective at the end of July 2023.

## II. Tenant May Not Recover a Civil Penalty Under NMSA 1978, Section 47-8-39 (1999)

**{12}** Next, Tenant argues that Landlord effectively admitted that she violated Section 47-8-39, prohibiting retaliation for the exercise of a tenant's rights under UORRA, by cutting off his electricity. As a result, Tenant contends that Landlord owes him a civil penalty of two times the amount of the monthly rent, pursuant to NMSA 1978, Section 47-8-48(B) (1995, amended 2025).

**{13}** Tenant advanced a claim under 47-8-39(A)(3). As stated above, we address the interpretation of Section 47-8-39 de novo. *See Rhudy*, 1981-NMSC-062, ¶¶ 4-15. Section 47-8-39 entitles a resident to certain remedies when a landlord retaliates against a resident based on the resident taking one of seven actions listed in Section 47-8-39(A). Examples of the protected actions include: organizing or becoming a member of a residents' union, § 47-8-39(A)(2); making a fair housing complaint, § 47-8-39(A)(4); or testifying on behalf of another resident, § 47-8-39(A)(6). As relevant here, Section 47-8-39(A)(3) also prohibits an owner from retaliating against a resident by decreasing services because a resident "acted in good faith to exercise [their] rights under [UORRA], including when the resident makes a written request or complaint to the owner to make repairs to comply with the owner's obligations under Section 47-8-20." Section 47-8-39(A)(3).

**{14}** Tenant argues he is entitled to recovery under Section 47-8-39(A)(3) because (1) "there is no allegation that [he] was not in compliance with a rental agreement or otherwise in violation of any provision of the [UORRA]"; (2) Landlord retaliated against him by cutting off his electricity; and (3) Landlord's retaliation was in response to the exercise of his right to continue residing on the property until he received written notice to vacate under NMSA 1978, Section 47-8-13 (1995) and NMSA 1978, Section 47-8-37 (1975)[1]. In support, Tenant contends that *Casa Blanca Mobile Home Park v. Hill*, 1998-NMCA-094, ¶ 10, 125 N.M. 465, 963 P.2d 542, demonstrates that Landlord's "[r]eduction of services in retaliation for asserting his right to remain on the property until

---

[1]Section 47-8-13 defines what constitutes "service of notice" for the purposes of UORRA, and Section 47-8-37 sets forth the manner in which an owner or resident may terminate residency pursuant to UORRA.

given written notice to vacate the premises is prima facie evidence of retaliation." We disagree.

**{15}**     The retaliation prohibited by Section 47-8-39 is retaliation for specific action taken by a tenant. It is retaliation for making a complaint, organizing or joining a union, acting in good faith to exercise UORRA rights—including complaining or making a written request to the owner to comply with UORRA, prevailing in a lawsuit, testifying on behalf of another resident, or abating rent. Tenant did none of these things. Tenant simply stayed on the property. *Hill* does not provide support for his claim that simply continuing to occupy the premises when a landlord violates a provision of UORRA gives rise to a claim for retaliation. In *Hill*, the residents brought a claim under Section 47-8-39(A)(3) asserting that the owners retaliated in response to the residents' complaints about noisy neighbors. *Hill*, 1998-NMCA-094, ¶¶ 4, 5. This Court considered whether the affirmative exercise of complaining about noisy neighbors by the residents constitutes an exercise of a right set forth in the provisions of UORRA. *Id.* ¶¶ 9-10. This Court determined that the right to quiet enjoyment raised by the residents is not a right "*provided* under the UORRA" such that it enabled the residents to recover under 47-8-39(A)(3). *Hill*, 1998-NMCA-094, ¶¶ 10, 15. *Hill* does not support Tenant's position here.

**{16}**     The record here reveals no particular affirmative exercise of rights by Tenant at all beyond continuing to reside on the property. Tenant argues that he exercised the right to receive written notice to vacate the property, but Tenant did not establish that Landlord turned off the electricity because Tenant exercised an UORRA right to receive written notice. Recovery under Section 47-8-39(A)(3) requires more than a mere showing that Tenant resided on the property and Landlord reduced services by cutting off Tenant's electricity. *See* NMSA 1978, § 47-8-27.1 (1995) (addressing remedies for breach of Section 47-8-20). It requires that Tenant took one of the affirmative actions listed in Section 47-8-39(A) to *exercise* his rights under UORRA and that in response, Landlord retaliated against him for taking that action. Accordingly, the record does not support granting a civil penalty on the basis advanced by Tenant here.

### III.     Neither Party Is Entitled to an Award of Attorney Fees

**{17}**     Finally, Tenant argues that he "is the prevailing party if Landlord does not prevail on any part of her claim." Tenant contends that, because the district court denied Landlord's claims for damages and restitution, the district court abused its discretion in not awarding him attorney fees and costs.

**{18}**     We review a district court's determination as to an award of attorney fees for abuse of discretion. *Guest v. Allstate Ins. Co.*, 2024-NMCA-022, ¶ 26, 542 P.3d 768. In doing so, we consider "whether the district court's decision was clearly against the logic and effect of the facts and circumstances before the court. However, our review of legal questions and whether the law has been correctly applied is de novo." *Id.* (text only) (citations omitted). UORRA's Section 47-8-48(A) provides that "the prevailing party shall be entitled to reasonable attorney[] fees and court costs to be assessed by the court." Here, the district court determined "[Tenant] and [Landlord] did not prevail on any issue

before the court and therefore each party will be responsible for their own attorney fees and costs."

{19}    The prevailing party is "the party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention." *Stodgell v. Weissman*, 2025-NMCA-003, ¶ 15, 561 P.3d 1097 (internal quotation marks and citation omitted). Here, Tenant successfully defended against the claims initially brought by Landlord. *See Hedicke v. Gunville*, 2003-NMCA-032, ¶ 26, 133 N.M. 335, 62 P.3d 1217 (recognizing that a prevailing party includes a defendant who avoids an adverse judgment). Further, Landlord successfully defended against Tenant's cross-claim for civil penalties. *See id.* As such, each party prevailed in defending against an adverse judgment and failed to prevail on their respective claim. Accordingly, the district court's determination that neither party prevailed was not clearly against the logic and effect of the facts and circumstances here. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 33, 127 N.M. 654, 986 P.2d 450 (concluding that neither party prevailed because the trial court ruled in favor of each party on one issue, and therefore neither party was entitled to an award of costs).

## CONCLUSION

{20}    Based on the foregoing, we reverse the Order insofar as it determined Landlord had no duty to provide electricity under UORRA and affirm on all other grounds.

{21}    **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**KATHERINE A. WRAY, Judge**