1997-NMCA-068

943 P.2d 571

**Fred SANCHEZ, Plaintiff–Appellant,**

v.

**SAN JUAN CONCRETE CO., Defendant–Appellee.**

**No. 17152.**

Court of Appeals of New Mexico.

July 7, 1997.

David L. Plotsky, James Rawley, Albuquerque, for Plaintiff–Appellant.

Walter J. Melendres, Paul S. Grand, Andrew S. Montgomery, Montgomery & Andrews, P.A., Santa Fe, for Defendant–Appellee.

## OPINION

HARTZ, Chief Judge.

(1) Plaintiff worked for San Juan Concrete (San Juan) as a truck driver. He was severely injured while driving a San Juan truck under the influence of alcohol. After being denied workers' compensation benefits, he sued San Juan for improperly entrusting him with the truck. The district court granted San Juan summary judgment, apparently on the ground that San Juan owed no duty to protect Plaintiff from injury caused by his own voluntary intoxication. Plaintiff appeals. We reverse and remand for further proceedings in district court. We hold that (1) San Juan would be subject to liability if it was grossly negligent and reckless in entrusting the vehicle to Plaintiff and (2) there is a genuine issue of fact regarding whether San Juan engaged in such egregious misconduct. Also, we reject San Juan's argument that the Worker's Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl. Pamp.1991), immunizes it from liability, because the argument relied upon on appeal was not made in district court.

## I. BACKGROUND

(2) For the ten years prior to the accident, Plaintiff worked for San Juan as a cement truck driver. After reporting to work he would be dispatched to one or more construction sites, load his truck with wet concrete, deliver it to the job sites, and return to San Juan's yard in Farmington to await the next dispatch until his shift ended. On October 5, 1991, a Saturday, a San Juan dispatcher called him at home to tell him to report to work. He arrived sometime between 7 and 8

a.m. He made one delivery, returned to the yard, and then was dispatched at about 10:15 a.m. to take a second load to Leon Anaya in Aztec. Upon completion of the delivery Plaintiff went to his father's house rather than returning to the yard. He had no work-related reason to visit his father. Plaintiff suffered his injuries in a one-vehicle accident shortly before 4 p.m. while driving in the direction of San Juan's yard, about four miles from his father's. He was highly intoxicated at the time.

(3) Plaintiff filed a workers' compensation claim against San Juan and its insurer. The workers' compensation judge (WCJ) denied the claim. The compensation order filed on June 11, 1993 set forth three grounds for the denial: (1) the accident "did not arise out of employment with [San Juan]"; (2) the accident "was not in the course of employment with [San Juan]"; and (3) the accident "was the direct and proximate result of voluntary alcohol intoxication on the part of [Plaintiff]."

(4) On October 4, 1994 Plaintiff filed his complaint against San Juan in district court. The complaint contends that Plaintiff "was hung over, intoxicated, and without sleep" when he reported to work on October 5, that he requested that he not be required to work, and that his request was refused by the dispatcher. Plaintiff also claimed that San Juan adopted but negligently carried out and failed to enforce a company substance abuse policy by not intervening in Plaintiff's alcohol abuse and not properly training and supervising company managers to deal with alcohol abuse. On May 25, 1995 San Juan moved for summary judgment, contending that the complaint was barred by the Workers' Compensation Act, that the complaint did not state a cause of action for negligent entrustment, and that Plaintiff's accident was not proximately caused by his alleged intoxication at the time he was entrusted with the truck. After reviewing the submissions of the parties, the district court issued a letter opinion on December 11, 1995, stating that San Juan "had no duty, under these facts, to the negligent [Plaintiff] for [Plaintiff's] accidental injuries caused by his own voluntary intoxication." The order granting summary judgment filed on December 27 recites only that there was no genuine issue of material fact and that San Juan was therefore entitled to judgment.

(5) On appeal San Juan does not rely on the proximate-cause argument raised in district court. The issues on appeal are whether the claim is barred by the Workers' Compensation Act and whether the evidence would sustain a claim that San Juan breached a duty to Plaintiff by entrusting the truck to him. For the following reasons we must reverse the order granting summary judgment and remand for further proceedings in the district court.

## II. EXCLUSIVITY OF WORKERS' COMPENSATION ACT

(6) San Juan relies on the exclusive-remedy provisions of the Workers' Compensation Act. The pertinent language of Section 52–1–6(E) (effective Jan. 1, 1992), states:

> The Workers' Compensation Act provides exclusive remedies. No cause of action outside the Workers' Compensation Act shall be brought by an employee ... against the employer ... for any matter relating to the occurrence of ... any injury ... covered by the Workers' Compensation Act.

Likewise, Section 52–1–9 states that the Act is the exclusive remedy for injuries "caused by accident arising out of and in the course of [the worker's] employment."

(7) San Juan contends that Plaintiff's tort claim is barred because his injury was covered by the Workers' Compensation Act. It relies on the following language from Section 52–1–19:

> "[I]njury by accident arising out of and in the course of employment" ... shall not include injuries to any worker occurring while on his way to assume the duties of his employment ..., the proximate cause of which is not the employer's negligence.

San Juan asserts that the facts are undisputed that Plaintiff was on his way to return to work at San Juan's yard at the time of the accident and therefore workers' compensation is Plaintiff's exclusive remedy for any negligence by San Juan. *See Galles Chevrolet Co. v. Chaney,* 92 N.M. 618, 593 P.2d 59

(1979); *Mountain States Tel. & Tel. Co. v. Montoya,* 91 N.M. 788, 581 P.2d 1283 (1978).

(8) San Juan, however, did not present this argument to the district court. Although San Juan contended that Plaintiff's tort claim was barred by the exclusivity provisions of the Workers' Compensation Act, it in no way relied on *Galles, Mountain States,* or Section 52–1–19 for the proposition that a worker cannot recover in a tort claim against the employer for an injury negligently caused by the employer while the worker was on the way to assume the duties of employment. It argued solely that but for Plaintiff's intoxication, his injury would be considered to have arisen out of and in the course of his employment.

(9) Recognizing that we might decide that the argument based on Section 52–1–19 was not preserved below, San Juan contends that preservation was not necessary. It relies on a recent statement by this Court that we "will affirm a trial court's decision reaching a correct result, even though the reason offered to support the result is wrong." *Moore v. Sun Publ'g Corp.,* 118 N.M. 375, 379, 881 P.2d 735, 739 (Ct.App.1994). We acknowledge this power of an appellate court, but it is a power to be used cautiously. As we have explained:

> Although we may affirm a district court ruling on a ground not relied upon by the district court, we will not do so if reliance on the new ground would be unfair to the appellant. In particular, it would be unfair to an appellant to affirm on a fact-dependent ground not raised below.

*State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994) (citations omitted).

(10) We are reluctant to presume that all the facts relating to Plaintiff's accident have already been fully explored. Had San Juan

raised this issue below, Plaintiff may have been able to point to additional evidence indicating that he was not on his way to work at the time of the accident. Also, Plaintiff may have been able to respond with evidence of an affirmative defense, such as estoppel.[1] To be sure, our refusal to affirm on this ground may result in unnecessary delay and effort if Plaintiff is unable to present any additional evidence on remand. Nevertheless, any complaint San Juan may have about such inefficiency could have been avoided if it had presented its legal argument in a timely fashion.

## III. NEGLIGENT ENTRUSTMENT

(11) New Mexico law recognizes that one who negligently entrusts a motor vehicle to an incompetent driver may be liable for injury to a third person caused by the driver's incompetence. *See, e.g., DeMatteo v. Simon,* 112 N.M. 112, 114, 812 P.2d 361, 363 (Ct.App.1991). But no reported New Mexico case has addressed the liability of the entrustor to the entrustee.

(12) The specific question presented by this appeal is whether one can be liable for entrusting a vehicle to an intoxicated person who suffers injury as a result of driving while intoxicated. In other words, does the entrustor owe any duty to the intoxicated entrustee and if so, what is the scope of the duty? This question is one of law predicated on policy. *See Gourdi v. Berkelo,* 122 N.M. 675, 677, 930 P.2d 812, 814 (1996) (duty of landlord to tenant's employee is question of law to be resolved by reference to policy). That policy, however, is not set by the personal predilections of individual judges. *See* Melvin Aron Eisenberg, *The Nature of the Common Law* 21–27 (1988). It is based on

---

1. In the workers' compensation case San Juan and its insurer argued that Plaintiff's claim did not satisfy the requirement of the Workers' Compensation Act that the injury be "proximately caused by accident arising out of and in the course of his employment," § 52–1–9(C), because Plaintiff's conduct constituted an abandonment of his employment. The WCJ ruled that the accident did not arise out of Plaintiff's employment and was not in the course of his employment with San Juan. It may appear that San Juan's exclusivity argument in district court is therefore barred by collateral estoppel, also known as issue preclusion. We note, however, that an alternative ground for the WCJ's decision was that the accident was the proximate result of Plaintiff's voluntary intoxication. We question whether issue preclusion can be predicated on a finding that is one of two or more alternative findings, each of which could support the judgment. *See* Restatement (Second) of Judgments § 27 cmt. i (1982). On the other hand, other estoppel theories may be available to Plaintiff.

community moral norms and policy views, tempered and enriched by experience, and subject to the requirements of maintaining a reliable, predictable, and consistent body of law, *see id.* at 14–49.

(13) The principal source for guidance in these matters is legal precedent. *See Gourdi,* 122 N.M. at 677, 930 P.2d at 814. San Juan relies on *Trujillo v. Trujillo,* 104 N.M. 379, 721 P.2d 1310 (Ct.App.1986). In that decision we held that "a tavernkeeper who unlawfully serves alcohol to an intoxicated patron is [not] civilly liable for injuries suffered by the patron as a result of that act." *Id.* at 379, 721 P.2d at 1310. At that time NMSA 1978, Section 60–7A–16 (Repl. Pamp.1981) prohibited the sale of alcoholic beverages to an intoxicated person and NMSA 1978, Section 41–11–1(A) (Supp.1983), permitted a liquor licensee's civil liability for a breach of Section 60–7A–16 when "it was reasonably apparent to the licensee" that the patron was intoxicated and the licensee knew from the circumstances that the patron was intoxicated. *Trujillo* also noted that in *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982), our Supreme Court had recognized a cause of action "against a tavernkeeper by a third person injured as a result of the tavernkeeper's sale of intoxicating liquor to an intoxicated patron." *Trujillo,* 104 N.M. at 380, 721 P.2d at 1311. Nevertheless, we held that the tavernkeeper was not liable to the patron—that is, had no duty to the patron—for the following reasons:

> [T]he concerns of public policy do not extend to protect an intoxicated adult patron from the results of his intoxication.... A duty should not be imposed upon the tavernkeeper, and protection should not be extended, because the adult voluntarily created the vulnerability that is the problem. *See Allen v. County of Westchester,* 109 A.D.2d 475, 492 N.Y.S.2d 772 (1985). "To allow recovery in favor of one who has voluntarily procured a quantity of liquor for his or her own consumption with full knowledge of its possible or probable results 'would savor too much of allowing * * * [said] person to benefit by his or her own wrongful act.' " *Id.* at 480, 492 N.Y.S.2d at 776 (quoting from *Buntin v.*

*Hutton,* 206 Ill.App. 194, 199). We cannot allow such a result.

*Id.* at 382, 721 P.2d at 1313.

(14) In short, although we reaffirmed that the tavernkeeper should exercise reasonable care in serving liquor to patrons, we held it inappropriate to permit the patron to recover for breach of that standard of care. San Juan contends that *Trujillo* establishes a general common-law proposition that one has no duty to protect a voluntarily intoxicated person from the effects of that intoxication, or, at the least, one who supplies a motor vehicle has no duty to protect the driver from the consequences of driving while voluntarily intoxicated.

(15) Common-law precedent is not, however, the only source of policy to guide the courts. Statutes, enacted by persons elected to represent the public will, may be a more reliable source of information concerning community norms and policy. Virtually from its inception, the common law has progressed by incorporating legislative enactments into its fabric. *See* Roger J. Traynor, *Statutes Revolving in Common–Law Orbits,* 17 Cath. U.L.Rev. 401 (1968). Courts continue, and should continue, to look to legislation as a source of policy. *See Gourdi,* 122 N.M. at 677, 930 P.2d at 814; Walter V. Schaefer, *Precedent and Policy,* 34 U.Chi.L.Rev. 3, 18–22 (1966); Eisenberg, *supra,* at 30.

(16) It is therefore noteworthy that the legislature has significantly restricted the scope of *Trujillo.* The present dramshop statute (which was enacted prior to *Trujillo* but was not in effect at the time of the accident in that case, *see* 104 N.M. at 383, 721 P.2d at 1314), states:

> No person who was sold or served alcoholic beverages while intoxicated shall be entitled to collect any damages or obtain any other relief against the licensee who sold or served the alcoholic beverages unless the licensee is determined to have acted with gross negligence and reckless disregard for the safety of the person who purchased or was served the alcoholic beverages.

Section 41–11–1(B) (Repl.Pamp.1996). Thus, in certain limited circumstances a person injured by his or her own voluntary intoxi-

cation can recover in tort from one who failed to protect the person from that intoxication. If the tavernkeeper was merely negligent, the patron cannot recover. But if the tavernkeeper acted with gross negligence and reckless disregard for the patron's safety, the tavernkeeper may be liable to the patron.

(17) What is the basis for the balance struck in Section 41–11–1(B)? Why is a third party injured by the patron's intoxication permitted to recover for the tavernkeeper's simple negligence whereas the patron cannot? The tavernkeeper is equally culpable in either circumstance—the same conduct, serving an intoxicated patron, is involved in each. The injury to the patron is no less foreseeable than injury to the third party; it is probably more foreseeable. The reason for the distinction between the patron and the third party is simply the reprehensibleness of the patron's conduct. Whereas *Trujillo* found it too unsavory to permit the intoxicated person to recover, the statute finds it even more distasteful to forbid recovery when the tavernkeeper is particularly culpable—having "acted with gross negligence and reckless disregard for the safety" of the patron.

(18) We recognize that Section 41–11–1 does not govern the situation before us. We must be careful not to read too much policy into a statute. As Judge Easterbrook has observed, statutes are vectors not arrows, Frank H. Easterbrook, *Text, History, and Structure in Statutory Interpretation,* 17 Harv.J.L. & Pub.Pol'y 61, 68 (1994), meaning that legislation is ordinarily limited in scope. Legislation often represents a compromise between conflicting policies; for a court to select one of those policies as legislative policy and extend that policy beyond the limits of the statute may do violence to the legislative compromise. *See D'Avignon v. Graham,* 113 N.M. 129, 137, 823 P.2d 929, 937 (Ct.App. 1991) (Hartz, J., specially concurring). *But cf. Michaels v. Anglo Am. Auto Auctions,* 117 N.M. 91, 869 P.2d 279 (1994) (statute permitting limited recovery when employer retaliates against worker for filing workers' compensation claim establishes policy forming basis of common-law claim for more extensive recovery).

(19) Nevertheless, we find Section 41–11–1(B) persuasive. It reflects a societal attitude about suits by intoxicated persons against those who were in a position to prevent them from engaging in self-destructive conduct. In weighing its disapproval of the intoxicated person against its disapproval of the tavernkeeper, the legislature determined that the balance tilted in favor of liability once the tavernkeeper acted particularly improperly.

(20) The apparent rationale for Section 41–11–1(B) would justify similar treatment of entrustors. Perhaps society looks more favorably on some entrustors than on tavernkeepers (arguing for less liability for entrustors), but if the entrustor acts with gross negligence and reckless disregard for the safety of the intoxicated entrustee, we see no reason to treat the entrustor more leniently than a tavernkeeper. We therefore hold that one who entrusts a motor vehicle to an intoxicated person may be liable to the entrustee if the entrustor acts with gross negligence and reckless disregard for the safety of the entrustee.

(21) The question whether an entrustor should be liable to a voluntarily intoxicated entrustee for simple negligence is a more difficult issue. The general rule is that one who negligently entrusts a chattel to an incompetent person is subject to liability for any resulting foreseeable harm. Restatement (Second) of Torts § 390 (1965) (hereinafter Restatement) states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Under modern tort law even if the injured party is also at fault, the negligent entrustor is ordinarily not relieved of liability; the liability is only reduced, not cancelled, as a result of the injured party's fault. *See Scott*

*v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981) (abandoning contributory negligence and adopting comparative negligence). In conformity with this approach, New Mexico has largely eliminated distinctions between degrees of negligence and there is a strong presumption against introducing them in our tort law.

(22) On the other hand, the language of *Trujillo* suggests that voluntary intoxication should be treated as a special species of fault. It said that it could not allow a voluntarily intoxicated driver "to benefit by his or her own wrongful act." 104 N.M. at 382, 721 P.2d at 1313 (internal quotation marks omitted). Likewise, Section 41–11–1(B) treats the intoxicated victim differently from other negligent victims. Moreover, our tort law still recognizes degrees of egregious conduct for certain purposes, such as awarding punitive damages, *see* UJI 13–1827 NMRA 1997 (jury instruction on punitive damages for conduct that is reckless, willful, grossly negligent, etc.) and imposing joint and several liability, *see* NMSA 1978, § 41–3A–1(C)(1) (Repl.Pamp.1996) (intentional tortfeasor jointly and severally liable for all damages (including his or her own damages?)); and some New Mexico authority treats voluntary intoxication as akin to intentional misconduct, *see California First Bank v. State,* 111 N.M. 64, 73–74 n. 6, 801 P.2d 646, 655–56 n. 6 (1990) (discussing whether decision to drive while intoxicated could satisfy intent element for the tort of battery); Section 52–1–11 (barring workers' compensation benefits for injury "occasioned by the intoxication of such worker or willfully suffered by him or intentionally inflicted by himself").

(23) If we look outside New Mexico for assistance, we find a split of authority. For example, New York law, which we followed in *Trujillo,* would bar recovery by a voluntarily intoxicated driver against one who negligently entrusted the vehicle to the driver. *See Good v. MacDonell,* 149 Misc.2d 315, 564 N.Y.S.2d 949, 953–54 (Sup.Ct.1990). On the other hand, comment c to Restatement § 390 appears to support liability. It states:

> [I]f the supplier knows that the condition of the person to whom the chattel is supplied is such as to make him incapable of

exercising the care which it is reasonable to expect of a normal sober adult, the supplier may be liable for harm sustained by the incompetent although such person deals with it in a way which may render him liable to third persons who are also injured.

Illustration 7, which follows this sentence, states that one who rents a boat to persons "who are obviously so intoxicated as to make it likely that they will mismanage the boat so as to capsize it or to collide with other boats" is subject to liability to the estates of the renters who drown as the result of negligently colliding with another boat. The comment must be viewed cautiously because the Restatement was produced at a time when contributory negligence barred recovery, *see id.* cmt. c. (no right to recover when person "accepts and uses a chattel knowing that he is incompetent"), but it has been relied upon recently to permit recovery by an intoxicated driver from the person who entrusted the vehicle to the driver. *See Casebolt v. Cowan,* 829 P.2d 352 (Colo.1992) (en banc).

(24) We leave resolution of this issue to another day. All we need resolve on this appeal is whether summary judgment was appropriate. We have already held that San Juan could be liable for acting with gross negligence and reckless disregard for Plaintiff's safety. As we now explain, once we recognize this theory of liability, the record before us cannot sustain the summary judgment.

(25) We have reviewed the sworn affidavits and testimony presented to the district court for consideration on the motion for summary judgment. Although San Juan points to considerable testimony suggesting that it was not negligent, courts do not weigh the evidence on a motion for summary judgment. *See Hutcherson v. Dawn Trucking Co.,* 107 N.M. 358, 361, 758 P.2d 308, 311 (Ct.App.1988). We must set aside the summary judgment if there is evidence which, if believed, would establish Plaintiff's cause of action. *See Spectron Dev. Lab. v. American Hollow Boring Co.,* 1997 NMCA 025, ¶ 8, 123 N.M. 170, 173, 936 P.2d 852, 855 (1997); Rule 1–056(C) NMRA 1997.

(26) The principal source of support for Plaintiff's cause of action is his own sworn words. His affidavit includes the following paragraphs:

15. On the evening of October 4, 1991, I went out drinking, stayed up all night drinking, and did not get home until around four or so on the morning of October 5. I believe I dozed for a little while in the early morning hours of October 5, but not for very long.

16. Later, on the morning of October 5, 1991, I was awakened at home by my wife (now my ex-wife) who advised me that [the dispatcher] had called and told her I was late for work and needed to get right in.

17. I do not remember whether I talked to [the dispatcher] or not over the phone, to tell him I'd be late, or would want to take the day off; nor do I remember how I got to work (whether I drove or was driven in by m[y] wife), but when I reported to work, I told [the dispatcher] that I was drunk, tired, hung over and unfit to operate the cement truck and needed to go home and get some sleep.

18. Despite my telling this to [the dispatcher] on several occasions that morning at the plant, he refused to let me off work, and ordered me to get my truck, load up and begin my runs for the day.

19. I delivered one load to a construction site on Harper Hill, and upon returning to the yard, I again asked [the dispatcher] to let me go home as I was still drunk, hung over, tired and unfit to operate the cement truck.

20. Again, [the dispatcher] refused to let me off work, told me I'd be fired if I did not continue to work that day, and ordered me to deliver a second load to Leo Anaya's house.

The record also contains testimony by Plaintiff to the effect that he had been drinking all night, reported to work drunk, and was ordered over his objections to drive the cement truck.

(27) In addition, a fellow employee testified that when he saw Plaintiff as Plaintiff left the dispatcher's office the morning of October 5, he thought that Plaintiff looked drunk and asked Plaintiff, "Are they gonna let you go like this?" The fellow employee also said that Plaintiff told him that he had not been to bed and had been drinking all night. Two other drivers testified that when the dispatcher got off the phone with Plaintiff he commented that Plaintiff had been out partying until 4 a.m. and had "probably been out all night getting f—— up." Finally, the customer who received the first load of concrete delivered by Plaintiff on October 5 testified that Plaintiff said that he was drunk. When the customer, who described Plaintiff as "smell[ing] like a brewery," asked Plaintiff why he didn't take his truck back and stop working, Plaintiff told him that he would be fired if he did not proceed.

(28) From this testimony a fact finder could infer that Plaintiff was ordered to drive his truck despite the fact that he was visibly intoxicated, said he was intoxicated, and asked to be relieved of duty. If such facts were found, the fact finder could decide that the San Juan dispatcher acted with gross negligence and reckless disregard for Plaintiff's safety when he entrusted Plaintiff with the San Juan truck. Therefore, summary judgment was inappropriate.

## IV. CONCLUSION

(29) We reverse the award of summary judgment to San Juan and remand to the district court for further proceedings consistent with this opinion.

(30) **IT IS SO ORDERED.**

WECHSLER and ARMIJO, JJ., concur.