2004-NMCA-002

82 P.3d 960

**John C. BLAKE, Plaintiff–Appellant,**

v.

**PUBLIC SERVICE COMPANY OF NEW MEXICO, Defendant–Appellee,**

and

**The City of Albuquerque, Defendant.**

No. 23,671.

Court of Appeals of New Mexico.

Oct. 30, 2003.

Certiorari Granted, No. 28,383, Dec. 19, 2003.

John G. Travers, Albuquerque, NM, for Appellant.

Robert C. Conklin, Thomas C. Bird, Mary R. Jenke, John K. Ziegler, Keleher & McLeod, P.A., Albuquerque, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} Plaintiff appeals the order of the trial court granting summary judgment in favor of

Defendant Public Service Company of New Mexico (PNM). At issue is whether PNM has a duty to the public to maintain street-lights. We hold that PNM has no duty to the public to maintain streetlights under the circumstances of this case, and therefore we affirm the trial court.

## FACTS

{2} Plaintiff was struck by a car and in-jured while crossing the Ortiz SE intersec-tion as he was walking westbound on Zuni SE in Albuquerque at approximately 9:38 in the evening. Though a streetlight was in-stalled at that intersection in 1977, it had been removed, possibly as many as seventeen years before the accident. Plaintiff alleged in his complaint that PNM had a duty to reasonably maintain, operate, install, rein-stall, and inspect the street lighting at that corner, and that PNM breached that duty, which proximately caused his injuries.

{3} The City of Albuquerque has a con-tract with PNM to supply streetlights for the City (the contract). PNM owns the street-light at issue in this case, but is in dispute with the City about whether it has a duty to inspect and maintain its streetlights. PNM has contracted to maintain service for all lighting facilities, and the City has contracted to refrain from maintaining or repairing PNM-owned lights. However, PNM and the City are also bound by the tariffs that accom-pany the contract. In Schedule 19, the City assumes a duty to report the failure of any lamp to PNM. PNM argues that PNM's only duty under the contract is to restore light service after the City has notified PNM of any failure, but that it has no duty to inspect for deficiencies. Notably, the contract only obligates PNM to "perform normal operation and maintenance of the lighting system ... sufficient to maintain an overall lighting effi-ciency of approximately 70 percent[.]"

{4} PNM moved for summary judgment, arguing that it owed no legal duty to Plaintiff to maintain the streetlight at issue, that there was no legal relationship between it and Plaintiff, and that there was no evidence that PNM breached any duty owed to Plain-tiff. The trial court granted summary judg-ment to PNM, finding:

1. A public utility company owes no duty to the general public based on the lack of street lighting as contracted for with a municipality.

2. Plaintiff John Blake's complaint fails to state a cause of action against Defen-dant Public Service Company of New Mex-ico as Defendant Public Service Company of New Mexico as a public utility owed no duty to John Blake for the lack of street lighting.

Plaintiff appeals this order, arguing that PNM is charged with a common law duty to use ordinary care to keep its property safe, making it responsible for reasonable inspec-tion and maintenance of its streetlights.

## DISCUSSION

### Standard of Review

{5} Summary judgment is properly granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Though the trial court determined that there were genuine issues of material fact concerning the con-tract and the removal of the streetlight, sum-mary judgment was granted on the threshold issue of duty. The only issue in this appeal is whether or not PNM owed a duty to Plaintiff, which is a legal question that we review de novo. *See id.*

### Duty in General

{6} Though the elements of negli-gence are generally facts for the jury to determine, "[n]egligence is not actionable un-less it involves the invasion of a legally pro-tected interest, the violation of a right." *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 99 (1928) "Proof of negli-gence in the air, so to speak, will not do." *Id.* (internal quotation marks and citation omitted). Thus, the ultimate question of duty is whether the law should give recogni-tion and effect to an obligation from one party to another, which in this case is PNM's obligation to maintain streetlights for the public who may cross a street without benefit of a working streetlight. *See Calkins v. Cox Estates*, 110 N.M. 59, 62, 792 P.2d 36, 39

(1990) ("[Plaintiff] must show that a relationship existed by which defendant was legally obliged to protect the interest of plaintiff.").

{7} Determination of duty is based in part on whether the injury to the plaintiff was foreseeable. *See Ramirez v. Armstrong,* 100 N.M. 538, 541, 673 P.2d 822, 825 (1983) ("If it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant."), *rejected on other grounds by Folz v. State,* 110 N.M. 457, 460, 797 P.2d 246, 249 (1990). In New Mexico, policy also determines duty. *Torres v. State,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995). In determining issues of policy, we look to "community moral norms and policy views, tempered and enriched by experience, and subject to the requirements of maintaining a reliable, predictable, and consistent body of law." *Sanchez v. San Juan Concrete Co.,* 1997–NMCA–068, ¶ 12, 123 N.M. 537, 943 P.2d 571. Our determination involves an analysis of the relationship of the parties, the plaintiff's injured interests, and the defendant's conduct. *Calkins,* 110 N.M. at 63, 792 P.2d at 40. We look principally to legal precedent, both common law and statutory. *Sanchez,* 1997–NMCA–068, ¶¶ 13–15, 123 N.M. 537, 943 P.2d 571. "[T]here is a policy in our law to protect certain interests, and thus the balancing implicit in the legal determination of a duty has been established by our legal tradition." *Calkins,* 110 N.M. at 63, 792 P.2d at 40.

### Parties' Positions

{8} There is no reported New Mexico case that addresses whether a public utility that contracts with a city to provide streetlights owes a duty to the public to maintain the streetlights. Plaintiff argues that PNM has a duty to use ordinary care, which includes reasonable inspection of its property and correction of known defects. He cites as authority *New Mexico Electric Service Co. v. Montanez,* which states, "[a] public utility has a duty to exercise due care in the erection, maintenance and operation of its line [sic] to those likely to come into contact with them." 89 N.M. 278, 280, 551 P.2d 634, 636 (1976).

{9} PNM argues that New Mexico courts have not recognized a duty on the part of a public utility to provide or maintain streetlights and that there are sound policy reasons for this Court to determine that PNM does not have a duty in this case. We agree with PNM.

### PNM Has No Duty Pursuant to Contract and Tort Law

{10} We believe that there is a distinct difference between a utility's maintenance of its electrical lines, as was the case in *Montanez,* and the maintenance of one out of hundreds, if not thousands, of streetlights in the City of Albuquerque. *See Montanez,* 89 N.M. at 279, 551 P.2d at 635 (concerning an electrician's helper who came into contact with a live wire while climbing an electric pole to remove some lines); *see also Koenig v. Perez,* 104 N.M. 664, 665–67, 726 P.2d 341, 342–44 (1986) (concerning a plaintiff who knowingly walked through live electrical wires after an electric pole had been knocked down in an accident, and determining that utility had a duty to inspect its operation for defects and a duty to use "due care in the erection, maintenance, and operation of its lines for the benefit of those likely to come into contact with them."). Streetlights can burn out or can be knocked down, but an unlit or unmaintained streetlight does not represent the danger that a high voltage electric wire does. Streetlights are a benefit provided to illuminate the night.

{11} A utility is not an insurer of the general public. *Id.* at 667, 726 P.2d at 344. Nor does a utility have a duty to provide lighting, so an interruption of service or failure to provide service is generally not actionable. 39 Am.Jur.2d, *Highways, Streets, and Bridges* § 434 (1999) ("[A] municipality is generally under no duty to light its streets even though it is given the power to do so, and, thus, its failure to light them is not actionable negligence, and will not render it liable in damages to a traveler who is injured solely by reason thereof."); *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 93, at 671 (5th ed.1984) (hereinafter Keeton) (stating that tort liability for interruptions of service would be ruinous for

utilities who must provide continuous service to all who apply for it under all kinds of circumstances, and that expense of litigation and settling claims could be a greater burden to the rate payer than is socially justified).

{12} The leading case, written many years ago by then Chief Judge Cardozo of the New York Court of Appeals, involved allegations that the utility that contracted with the city to provide water failed to provide sufficient pressure in the fire hydrants, resulting in the destruction of a warehouse by fire. *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896, 896–97 (1928). The court in that case stated that the action was not maintainable as one for breach of contract because "a contract between a city and a water company to furnish water at the city hydrants has in view a benefit to the public that is incidental rather than immediate, an assumption of duty to the city and not to its inhabitants." *Id.* at 897. The action was not maintainable as one for a common law tort because the low water pressure was "mere negligent omission, unaccompanied by malice or other aggravating elements." *Id.* at 899. "The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good." *Id.* at 898. "The failure in such circumstances to furnish an adequate supply of water is at most the denial of a benefit. It is not the commission of a wrong." *Id.* at 899.

{13} Many modern courts have adopted the court's reasoning in *H.R. Moch Co.* in ruling that a public utility under contract with a city owes no duty to a person injured as a result of failure to provide or maintain streetlights. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 427–28 (3d Cir.1991) (determining that the utility owed no duty to protect plaintiff from criminal attack that occurred in an area with known broken streetlights); *White v. S. Cal. Edison Co.*, 25 Cal.App.4th 442, 30 Cal.Rptr.2d 431, 434 (1994) (determining that the utility owed no contractual or common law duty to moped driver injured in a collision that occurred at an intersection where streetlights were not functioning); *Martinez v. Fla. Power &*

*Light Co.*, 785 So.2d 1251, 1252 (Fla.Dist.Ct. App.2001) (determining that the utility owed no duty to pedestrian killed by a motor vehicle while crossing a street where streetlight was not functioning); *Quinn v. Ga. Power Co.*, 51 Ga.App. 291, 180 S.E. 246, 247 (1935) (determining that the utility owed no duty to motorist killed in a collision that took place in a spot where streetlight was not working); *Shafouk Nor El Din Hamza v. Bourgeois*, 493 So.2d 112, 114–15 (La.Ct.App.1986) (determining that the utility owed no duty to pedestrian killed while walking on a road with inadequate and unmaintained lighting); *E. Coast Freight Lines, Inc. v. Consol. Gas, Elec. Light & Power Co.*, 187 Md. 385, 50 A.2d 246, 254–56 (1946) (determining that utility owed no duty to victims of a car accident that occurred as a result of unlit road); *Vaughan v. E. Edison Co.*, 48 Mass. App.Ct. 225, 719 N.E.2d 520, 521–22 (1999) (determining that the utility owed no duty to pedestrian injured while in a crosswalk that was unlit due to inoperative streetlights). *Cf. Horneyer v. City of Springfield*, 98 S.W.3d 637, 645 (Mo.Ct.App.2003) (determining that city owed no duty to motorists to maintain existing streetlights in intersections unless illumination is necessary to avoid dangerous and potentially hazardous conditions); *Thompson v. City of New York*, 78 N.Y.2d 682, 578 N.Y.S.2d 507, 585 N.E.2d 819, 820 (1991) (determining that city owed no duty to pedestrian struck while crossing at a place where nearest streetlight was burned out).

{14} The rationales of these cases persuasively draw the distinction recognized by Chief Judge Cardozo between launching an instrument of harm and simply failing to be an instrument of good. *H.R. Moch Co.*, 159 N.E. at 898. The *H.R. Moch Co.* case points out that the surgeon may not be obligated to operate, but once the surgeon does so, he or she is liable for infection caused by negligently sterilized instruments. *Id.* The negligent sterilization is launching an instrument of harm—the infection. *Turbe* uses the example of a lighthouse, which no one is required to build, but if built, it necessarily causes boats to rely on it such that if it is broken, its builder must undertake timely repairs or give warning that it is not operating. *Turbe*, 938 F.2d at 431. *Plattner v.*

*City of Riverside*, 69 Cal.App.4th 1441, 82 Cal.Rptr.2d 211 (1999), uses the similar example of a traffic light: a public entity might not be required to install a traffic signal, but once it does so, it thereby encourages the public to rely on the green light and proceed through the intersection without stopping; thus, if the red light is broken and negligently not fixed, the public entity is liable because the negligence in failing to fix the red light launches an instrument of harm, given ·the public's reliance on the green light. *Id.* at 213–14. These cases are to be ·contrasted with the failure to repair a streetlight, which in simply not lighting a dark street does not launch any instrument of harm, given that the darkness of the street is obvious to travelers and given that there are other methods of seeing in the darkness, i.e., automobile headlamps. *See id.* at 214.

{15} Only a few jurisdictions have determined that a utility can be liable for negligence in maintaining streetlights under an assumed duty standard. *See David v. Broadway Maint. Corp.*, 451 F.Supp. 877, 880–81 (E.D.Pa.1978) (determining that, though the utility did not have a duty to install lights, once installed, it had a duty of reasonable care in maintaining and replacing the lights); *Todd v. Northeast Utils.*, 40 Conn.Supp. 159, 484 A.2d 247, 248–49 (1984) (determining that the utility has a duty to rectify a dangerous situation if it has notice and it is foreseeable that an inoperable streetlight would cause the type of injury that occurred). *Cf. Greene v. City of Chicago*, 73 Ill.2d 100, 22 Ill.Dec. 507, 382 N.E.2d 1205, 1209 (1978) (stating that "where a city undertakes to provide lights, it is liable for injuries which result from deficient or inadequate ones" (internal quotation marks and citation omitted)).

■ {16} The cases determining that public utilities owe no duty to the public to maintain streetlights present facts that are very similar to the facts here, concerning a member of the public who was injured due to inadequate or nonexistent streetlights. Here, PNM has a contract with the City of Albuquerque, not individual residents. The City, not the public, is PNM's customer in this instance. Failure to fix a streetlight is not "launching an instrument of harm," as would be failing to fix a downed, live electrical line, but rather a denial of a benefit. We agree with the majority of courts cited above and hold that PNM has no duty to the public to maintain its streetlights. We note, too, that PNM's contract with the city obligates it to maintain streetlights at 70 percent efficiency, and there is no evidence showing that PNM's performance fell below this standard even if it was known that this particular streetlight was not functioning.

{17} Plaintiff relies heavily on *Lurye v. Southern California Edison Co.*, 84 Cal. Rptr.2d 225 (1999) (ordered not published), to support his argument. In *Lurye*, a pedestrian crossing in a marked crosswalk was struck by an automobile, due in part to a described "pool of darkness" left because the streetlight directly above the crosswalk had been damaged and removed by the electric company. *Id.* at 227–28. The court determined that the electric company owed a duty to persons using that crosswalk at night based on the Restatement (Second) of Torts § 324A (1965) (assuming a duty if rendering service to another which is necessary for the protection of a third person), and based on the "peculiar danger" the intersection posed if not lighted. *Lurye*, 84 Cal.Rptr.2d at 230–31.

{18} *Lurye* is not persuasive in this instance because the facts in that case are significantly different ·from the facts here. In *Lurye* the crosswalk in question was a marked crosswalk with a streetlight positioned directly above, leading the court to determine that the electric company foresaw that pedestrians crossing in this marked intersection at night would be in greater danger of being struck by a vehicle if the crosswalk was unlit rather than lit. *Id.* at 230. The electric company undertook to provide a streetlight in that location for the safety of pedestrians. *Id.* Therefore, after assuming the duty to light this crosswalk, the electric company was liable for failing to use reasonable care when it failed, for five months, to replace the damaged streetlight. *Id.* at 231–32.

{19} The *Lurye* court also determined that there was a peculiar condition that signifi-

cantly increased the risk of injury because this was a marked crosswalk, inviting pedestrians to enter the street at that location, making it a trap for the unwary. *Id.* at 233. There was also testimony from a sheriff's department traffic ·investigator stating that there were numerous other accidents up and down the street where the plaintiff was struck and that he had personally investigated six vehicle-pedestrian incidents at that location. *Id.* at 228. The frequency of prior accidents in the same crosswalk was a significant factor in the court's determination of the peculiar condition. *Id.* at 233. The driver of the vehicle also testified that by the time she could see the pedestrian in the darkness, it was too late to stop. *Id.* at 227.

{20} In contrast, there is no peculiar or dangerous condition here. There is no indication here that Plaintiff was crossing in a marked crosswalk or that the streetlight in question was positioned to light the way for a pedestrian crossing at that point. There is no evidence that there was any condition making that intersection peculiarly more dangerous for pedestrians than any other intersection. There is no evidence that the driver could not see Plaintiff because it was too dark. Finally, we note that *Lurye* was ordered unpublished by the California Supreme Court, giving it little, if any, authority in California courts. *See* Cal. Rules of Court Rule 977(a) (2003) (stating that, with narrow exceptions, an unpublished opinion "shall not be cited or relied on by a court or a party in any other action or proceeding"). We determine that Plaintiff's reliance on *Lurye* is misplaced.

**Duty/Risk Analysis and Other Policy Considerations Support the Conclusion That PNM Has No Duty to the Public to Maintain Streetlights**

{21} In examining policy considerations, we must take into account the burden that would be imposed against a public utility like PNM. *See White*, 30 Cal.Rptr.2d at 435 ("Duty is an allocation of risk determined by balancing the foreseeability of harm, in light of all of the circumstances, against the burden to be imposed."). "The capacity to bear or distribute loss is a factor to consider in

allocating the risk." *Vaughan*, 719 N.E.2d at 523. The *White* court stated these considerations succinctly:

> In determining whether a public utility should be liable to motorists for inoperable streetlights, we must consider the cost of imposing this liability on public utilities, the current public utility rate structures, the large numbers of streetlights, the likelihood that streetlights will become periodically inoperable, the fact that motor vehicles operate at night with headlights, the slight chance that a single inoperative streetlight will be the cause of a motor vehicle collision, and the availability of automobile insurance to pay for damages.

30 Cal.Rptr.2d at 437.

{22} The policy considerations weighing against imposing a duty and concomitant liability on public utilities to maintain streetlights are particularly strong in New Mexico. Our Constitution mandates that a public regulation commission set utility rates. N.M. Const. art. XI, § 2. New Mexico has declared that public utilities render an essential public service to a large number of the' general public and that the public interest requires the regulation and supervision of utilities so that "reasonable and proper services shall be available at fair, just and reasonable rates." NMSA 1978, § 62–3–1 (1967). Utility rates and services are closely regulated and supervised by the public regulation commission. NMSA 1978, § 62–6–4 (2003); *see Hobbs Gas Co. v. N.M. Pub. Serv. Comm'n*, 94 N.M. 731, 733, 616 P.2d 1116, 1118 (1980) (stating that the Commission is responsible for insuring that rates made and received by public utility are just and reasonable, and it has considerable discretion in so determining); *cf. El Paso Elec. Co. v. N.M. Pub. Serv. Comm'n*, 103 N.M. 300, 302–04, 706 P.2d 511, 513–15 (1985) (affirming Commission order deciding that charitable contributions, lobbying expenditures, and promotional or political advertising costs cannot be passed on to ratepayers, but that costs of informational advertising can be passed on because it benefits the ratepayers).

{23} Imposing tort liability on all ratepayers constitutes a burden that other jurisdictions have declined to impose on utility rate-

payers. *See White,* 30 Cal.Rptr.2d at 437 ("The burden on the public utility in terms of costs and disruption of existing rate schedules far exceeds the slight benefit to the motoring public from the imposition of liability."); *Vaughan,* 719 N.E.2d at 523–24 (determining that imposing such tort liability represents a burden to the ratepayer that cannot be socially justified); *see also* Keeton, *supra* § 93, at 671. Moreover, New Mexico mandates that all residents who own and operate motor vehicles be financially responsible for damages as a result of motor vehicle accidents. NMSA 1978, § 66–5–201.1 (1998). Thus, New Mexico has already determined where much of the burden of tort liability should lie when a motor vehicle is involved in an accident, such as the accident involving Plaintiff.

{24} PNM supplies an important public service to a very large number of customers. It cannot set its own rates and is heavily regulated in all aspects of its operation. We agree with the reasoning in *White* and *Vaughan,* and we decline for policy reasons to impose a duty on PNM to maintain streetlights for the benefit of the public, which would in turn impose a greater financial burden on all ratepayers.

### Restatement (Second) of Torts Does Not Apply to Plaintiff's Case

{25} Plaintiff asks this Court to adopt Restatement (Second) of Torts § 324A, Liability to Third Person for Negligent Performance of Undertaking:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

{26} Our Supreme Court has stated that "the Restatement is merely persuasive authority entitled to great weight that is not binding on this Court." *Gabaldon v. Erisa Mortgage Co.,* 1999–NMSC–039, ¶ 27, 128 N.M. 84, 990 P.2d 197. Our courts have not adopted this section of the Restatement, and we need not decide whether to do so today. Even were we to accept the principles stated in Restatement (Second) of Torts § 324A, Plaintiff's argument that PNM's actions increased the risk of harm would still fail. Restatement (Second) of Torts § 324A(a). Increase in the risk of harm is an increase relative to the risk that would have existed had PNM never provided the services in the first place. *See Turbe,* 938 F.2d at 432. "Put another way, the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance." *Id.* As noted above, PNM has no duty to the public to maintain streetlights, so the absence of lights cannot represent an increased risk. *See Plattner,* 82 Cal.Rptr.2d at 213 (noting that darkness is a naturally occurring condition that a municipality is under no duty to eliminate; thus, the fortuity of locating a light above a crosswalk does not render it more dangerous without the light). Therefore, even if PNM removed the streetlight in question, as Plaintiff alleges, an absence of light at night did not increase the risk to Plaintiff any more than if PNM had never installed the light in the first place.

{27} To the extent that Plaintiff argues that he relied on the presence of the light because he chose a well-lit, main street as being safer than other routes, we think that Plaintiff's reliance was unreasonable as a matter of law. There was evidence that the streetlight at issue had been missing for seventeen years previous to Plaintiff's injury. It is unreasonable to continue to rely on the existence of a streetlight that has not been lit for seventeen years. We reject Plaintiff's argument that Restatement (Second) of Torts § 324A applies in this case.

### CONCLUSION

{28} We hold that a public utility has no duty to the public to maintain streetlights and that PNM owed no duty to Plaintiff

under the circumstances of this case. We affirm the trial court's grant of summary judgment in favor of PNM.

{29} IT IS SO ORDERED.

WE CONCUR: CELIA FOY CASTILLO and MICHAEL E. VIGIL, Judges.