[No. E020878. Fourth Dist., Div. Two. Jan. 28, 1999.]

BETTY PLATTNER, as Executor, etc., Plaintiff and Appellant, v.
CITY OF RIVERSIDE, Defendant and Respondent.

**COUNSEL**

Holstein, Taylor & Unitt and Brian C. Unitt for Plaintiff and Appellant.

Stan Yamamoto, City Attorney, James E. Brown, Deputy City Attorney; Greines, Martin, Stein & Richland and Timothy T. Coates for Defendant and Respondent.

## OPINION

**McKINSTER, J.**—The issue in this appeal is whether a city's failure to maintain a streetlight over a crosswalk creates a dangerous condition of public property. This question comes to us by way of summary judgment entered in favor of the City of Riverside in an action for damages based on injuries Sarah Salmi suffered when she was hit by a car while crossing the street in the unlighted crosswalk.[1] In its summary judgment motion the city asserted that a municipality has no duty to provide street lighting and, therefore, has no duty to maintain that lighting, even at a crosswalk. The trial court agreed and granted the city's motion. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a complaint for damages against the driver of the car that hit her and against the city for not maintaining the streetlight.[2] In her second cause of action for negligence and dangerous condition of public property, plaintiff alleged, in pertinent part, that the city "undertook to provide streetlighting as a part of its governmental function, and as such undertook the duty to provide such service in a non-negligent manner. The installation of the subject streetlight was necessary to obviate the danger posed by a pedestrian having to cross the roadway after dark; the failure to maintain the subject streetlight created a risk greater than that posed by the failure to install a light in that the Plaintiff had come to rely upon the light at the crosswalk in her travels; and the Plaintiff would not have taken that particular route home if she had known that she would be forced to cross in the pitch blackness." Plaintiff further alleged that the city "created a duty on its part to maintain the light by reason of the fact that [the city] designed and configured the crosswalk area underneath the streetlight, thereby creating a special duty to maintain the streetlight which illuminates said crosswalk." Plaintiff also alleged the city "assumed and owed a contractual duty to the Plaintiff in that the Plaintiff had contracted for the streetlight services which included maintenance and repairs and paid for said services on a monthly basis [as a charge included in her monthly electric utility bill]."

In its answer, the city raised numerous affirmative defenses, including that it had no duty to the public to provide streetlights; that installation of the

---

[1] Sarah Salmi, who was 83 years old in 1995 when the accident occurred, died in 1997 while this appeal was pending. We granted the motion of Betty Plattner to substitute herself as the personal representative of Salmi's estate as the plaintiff in this matter.

[2] The pleading pertinent to this appeal is plaintiff's amended complaint, filed after the trial court sustained defendant's demurrer to the original pleading. Because the amended pleading is the only complaint included in the record on appeal, we need not distinguish it and therefore will refer to it simply as the complaint.

streetlight in question was not necessary to obviate a dangerous condition; that failure to maintain the streetlight in question did not create a risk greater than the risk created by the total absence of a streetlight; that no duty arises on the part of a public entity that contracts with a consumer to provide general services such as water and electricity.

The city filed a motion for summary judgment in which it asserted that, as a matter of law, it did not have a duty to install streetlights and, therefore, the absence of lighting cannot constitute a dangerous condition of public property. Alternatively, even if the property were in dangerous condition because the streetlight was not working properly, the city did not have notice of that condition as required by Government Code section 835. In her opposition, plaintiff conceded the city did not have a duty to install streetlights but, plaintiff argued, once the city assumed that duty, it had a concomitant obligation to maintain the streetlights. Plaintiff argued that the city's failure to do so caused the crosswalk to be in a dangerous condition.

## DISCUSSION

While denominated a summary judgment motion, the dispositive issue does not depend on the particular facts of this case but, instead, is wholly a question of law. Thus, the city's motion with respect to the question of whether the city had a duty to maintain the streetlight over the crosswalk is really one for judgment on the pleadings. Because we agree with the trial court's resolution of this issue, and will affirm on that basis, we will not discuss the particulars of summary judgment motions.

██ Plaintiff concedes in this appeal, as she did in the trial court, that the city had no duty to install a streetlight over the crosswalk. Plaintiff contends, again as she did in the court below, that once the city installed the light it had a duty to maintain that streetlight in working order. ██ As plaintiff acknowledges, the general rule is that, " 'In the absence of a statutory or charter provision to the contrary, it is generally held that a municipality is under no duty to light its streets even though it is given the power to do so, and hence, that its failure to light them is not actionable negligence, and will not render it liable in damages to a traveler who is injured solely by reason thereof. . . . A duty to light, and the consequent liability for failure to do so, may, however, arise from some peculiar condition rendering lighting necessary in order to make the streets safe for travel. . . .' " (*Antenor* v. *City of Los Angeles* (1985) 174 Cal.App.3d 477, 483 [220 Cal.Rptr. 181], quoting 39 Am.Jur.2d, Highways, Streets and Bridges, § 405, pp. 803-804.)

██ In granting the city's summary judgment motion, the trial court relied on *White* v. *Southern Cal. Edison Co.* (1994) 25 Cal.App.4th 442 [30

Cal.Rptr.2d 431], a personal injury case involving an auto collision at an intersection where the streetlights were not all properly working. The *White* court cited *Antenor* for the above quoted rule in holding that Southern California Edison Company (SCE) was not liable to the motoring public for inoperable streetlights. Because the liability of a public utility such as SCE can be no greater than that of the municipality itself, SCE was not liable to the motorists for the inoperable streetlights. (*Id.* at pp. 451-452.)

*White* is equally dispositive here, despite plaintiff's assertion that the case is "dramatically distinguishable." Although plaintiff cites numerous purported factual distinctions between this case and *White*, the only one of arguable merit, and hence the only distinction we will address, is that here the city not only failed to maintain the streetlight but also selected the location for the crosswalk.[3]

Contrary to plaintiff's apparent view, the crosswalk was not dangerous in the abstract and therefore did not constitute a peculiar condition rendering lighting necessary. (*Antenor* v. *City of Los Angeles, supra*, 174 Cal.App.3d at p. 483.) Plaintiff does not claim and consequently has not shown there was anything dangerous about the crosswalk other than the absence of light. But darkness is a naturally occurring condition that the city is under no duty to eliminate. Thus, the fortuity of locating the streetlight at a spot where it illuminates the crosswalk does not render the crosswalk dangerous without the light.

Nor do we share plaintiff's view that by providing a crosswalk and thereby encouraging pedestrians to cross the street at that location the city invited the public to rely on the streetlight and thus created a duty to maintain the light. To support her "reliance" theory for liability, plaintiff cites this court's decision in *De La Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739 [94 Cal.Rptr. 175]. *De La Rosa* involved a stop sign that had become obscured by a tree. In reversing the directed verdict the trial court had entered in favor of the defendant city, this court cited the principle that "although a public entity is not liable for failure to install traffic signs or signals (Gov. Code, §§ 830.4, 830.8), when it undertakes to do so *and invites public reliance upon them*, it may be held liable for creating a dangerous condition in so doing." (*Id.* at p. 746, italics added.)

The emphasized language in *De La Rosa* is the rationale for the quoted principle—the motoring public must be able to rely on the assumption that a

---

[3]Plaintiff contends that *Antenor* and *White* are "dramatically distinguishable" from the facts in this case. We recognize the factual differences but conclude those differences do not preclude application of the articulated legal principle.

traffic signal is working properly, or a stop sign is visible to other motorists, and proceed accordingly. Thus, for example, a driver need not stop before entering an intersection on a green light and, instead, may assume the light is working properly and controlling traffic appropriately. When the apparatus is a streetlight, the public reliance rationale does not promote or protect any societal interest. First, unlike an inoperative traffic light or obscured stop sign which may only be visible to traffic approaching from one direction, it is obvious to all when a streetlight is out. Therefore, a pedestrian such as plaintiff cannot claim she relied on the inoperative streetlight in order to cross the street. Moreover, unlike traffic lights and stop signs which are the only means by which traffic is controlled, streetlights are not the only or even the primary means by which streets are illuminated for vehicular traffic. Vehicle headlamps are designed and used for that purpose. Thus, no societal interest is promoted by applying the "reliance" rationale to streetlights illuminating crosswalks.

Nor can plaintiff establish liability based on the allegation in her complaint, noted above, that she knew the crosswalk was lighted and relied on that knowledge in selecting her route. Plaintiff's allegation is based on language in *White* that a city may be liable for not maintaining a streetlight when, among other things, the injured party has "in some manner relied on the operation of the streetlight *foregoing other protective actions*, e.g., a pedestrian chooses a particular route home in reliance on the available streetlighting when the pedestrian would have chosen a different route or a different means of transportation in the absence of lighting." (*White* v. *Southern Cal. Edison Co.*, *supra*, 25 Cal.App.4th at p. 451, italics added.) According to the emphasized language it is not enough that the pedestrian relied on the streetlight. Liability predicated on the city's failure to maintain the light requires both reliance and foregoing other protective action. This exception to the general rule of nonliability anticipates a pedestrian who has taken a particular route based on the belief the route is lighted and does not discover otherwise until it is too late to take a different route. Plaintiff in this case knew the streetlight did not work before she crossed the street. Therefore, plaintiff neither relied on the light nor eschewed other protective action in choosing to cross at that location.

In short, the crosswalk at issue here was no more dangerous with the inoperative streetlight than it would have been if the city had not installed the light at all. Under the undisputed facts of this case, the unlighted crosswalk, as a matter of law, did not constitute a dangerous condition of public property *within* the meaning of Government Code section 830. The trial court, therefore, properly granted the city's motion for summary judgment.

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Hollenhorst, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 12, 1999.