Filed 3/10/26  Shariapanahi v. City of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| HAMID SHARIATPANAHI, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF LOS ANGELES, <br><br> Defendant and Respondent. | B334515 <br> (Los Angeles County <br> Super. Ct. No. BC710903) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael E. Whitaker and Anne Hwang, Judges. Affirmed.

The Severo Law Firm and Michael V. Severo for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs and Timothy Martin, Deputy City Attorneys, for Defendant and Respondent.

Plaintiff and appellant Hamid Shariatpanahi (appellant) appeals from the judgment following defendant and respondent City of Los Angeles's (City) successful motion for summary judgment. Appellant contends there are triable issues of material fact as to whether the City was entitled to the design immunity defense, had a duty to light an unmarked crosswalk, or was liable for failing to warn of a dangerous condition. As the City met its burden on the motion and no triable issues of material fact exist, we affirm.

## BACKGROUND

**The accident**

On August 31, 2017, at approximately 10:05 p.m., appellant walked up a ramp using the Los Angeles River bike path and attempted to cross Corbin Avenue. Corbin Avenue spans a bridge over the Los Angeles River Flood Control Channel. The bike path runs east and west along the channel's south side and passes beneath the bridge structure for Corbin Avenue. As appellant moved west across Corbin Avenue from the east sidewalk, he was struck by a vehicle travelling southbound at approximately 30 miles per hour. The traffic collision report indicated appellant suffered lacerations to his face and left calf, as well as partial amputation of his right pinky finger.

At the place appellant crossed, there were no crosswalk markings or breaks in the street striping suggesting an intention for pedestrians to cross. The east side of Corbin Avenue had a streetlight that was then inoperative. There were streetlights on the bike path, but they too were not functioning.

2

**The complaint**

In June 2018, appellant filed a lawsuit against the City, the driver and owner of the vehicle.[1] The complaint asserted causes of action for negligence and dangerous condition on public property. Appellant alleged the City designed and maintained the Los Angeles River bike path in a manner that created an unreasonable risk of injury to pedestrians using due care and acting in a reasonably foreseeable manner. The ramps from the bike path leading up to Corbin Avenue allegedly created an unmarked crosswalk giving the impression it was safe to cross the street in the middle of the block. Further, the complaint alleged the streetlights were not functioning at the time, rendering the area completely dark and substantially increasing a pedestrian's injury risk.

Appellant also alleged the driver was driving in an unsafe manner when appellant attempted to cross the street. Allegedly the driver was distracted at the time and driving at a high rate of speed. Appellant claims to have suffered injuries to his brain, body, and nervous system, resulting in substantial pain and suffering. The complaint sought general damages of $20 million, medical and incidental expenses, and loss of earnings and earning capacity.

**The motion to continue trial**

The initial trial date was December 20, 2019. The parties stipulated to continue the trial to June 23, 2020. In April 2020, the court continued the trial to September 9, 2021, due to the COVID-19 pandemic. In August 2021, the trial date was

---

[1]     Appellant settled his claims against the driver and the owner of the vehicle, both of whom are not parties to this appeal.

3

continued again to July 29, 2022, at appellant's request, with which the City agreed.

In April 2022, the City sought to reserve a hearing date for its summary judgment motion. However, the earliest hearing date available for the City's motion was June 29, 2023, nearly a year after the then-scheduled trial date. The City filed an ex parte application to advance the hearing date that was denied under the court's standing order.[2]

On April 15, 2022, the City filed a motion to continue trial on the ground the earliest date to hear its summary judgment motion was nearly a year after the trial date. The City argued the interests of justice required the trial to be continued because the City had a statutory right to have its motion heard. In opposition, appellant asserted that service of the motion for continuance was defective, and there was no good cause to continue trial because the City was not diligent in filing the summary judgment motion.

On May 9, 2022, the trial court granted the motion to continue the trial and rescheduled it for August 1, 2023. The court found the City's service of the motion for continuance was defective, but appellant was not prejudiced because he timely filed an opposition fully briefing the merits of the motion. The court considered the City's reasons for a continuance and found it

---

[2] The standing order stated: "The PI Courts have no capacity to hear multiple ex parte applications or to shorten time to add hearings to their fully booked motion calendars. The PI Courts do not regard the Court's unavailability for timely motion hearings as an 'immediate danger' or threat of 'irreparable harm' justifying ex parte relief. Instead of seeking ex parte relief, the moving party should reserve the earliest available motion hearing date (even if it is after the scheduled trial date) and file a motion to continue trial."

had shown good cause to continue the trial. The court indicated appellant's arguments opposing the motion were not persuasive.

**The motion for summary judgment**

In April 2023, the City moved for summary judgment, or alternatively summary adjudication, on three issues. First, the City contended it had no duty to maintain or operate streetlights and was therefore not liable for failing to do so. The City further argued appellant's case did not fall within the exception to this general rule because no evidence showed the streetlighting was necessary to obviate a dangerous condition known to the City, the failure to maintain the streetlight created a risk greater than the risk from the total absence of a streetlight, or that appellant relied on the streetlight operating and forewent other protective actions.

Second, the City asserted it was immune from liability for the design of the roadway pursuant to Government Code section 830.6.[3] The City maintained it was entitled to the design immunity defense because there was a causal relationship between the City's plan and appellant's injury. Also, the City posited there was discretionary approval of its plan prior to construction and substantial evidence supported the plan's reasonableness.

Finally, the City contended it was not liable for a dangerous condition of public property pursuant to section 835 because the roadway's design, construction, or maintenance did not contribute to the accident. The City also argued it had no notice of any dangerous conditions on the roadway as there had

---

[3] All undesignated statutory references are to the Government Code.

5

been no similar incidents in the location for 10 years prior to the accident.

In opposition, appellant asserted the City had a duty to provide lighting because the unmarked crosswalk was a peculiar condition that required lighting. Appellant explained the City's own standard called for lighting and the failure to install a streetlight created a false sense of safety for a pedestrian crossing at the surface level rather than using the undercrossing. In addition, appellant maintained the City was not entitled to the design immunity defense because the unmarked crosswalk was not part of the approved design. Appellant claimed none of the City's witnesses established who had discretionary authority to approve plans. Appellant argued the City's own traffic engineer indicated it was not illegal to cross in the area of the collision, and the City failed to provide substantial evidence supporting the design plans' reasonableness.

Appellant also asserted the City was liable for a dangerous condition of public property because it failed to warn motorists and pedestrians of the existence of the unmarked crosswalk, explaining the design immunity defense did not shield the City from liability based on negligence, independent of design. Appellant argued the City failed to follow its own guide, since the crossing location needed signage, markings, and lighting in place to warn of approaching drivers.

In July 2023, the trial court heard and granted the motion for summary judgment, finding there were no triable issues of material fact as to the negligence and dangerous condition causes of action against the City. As to the negligence cause of action, the court found the City was entitled to immunity because

6

appellant failed to allege a specific statute upon which the City would be liable for negligence.[4]

As to the dangerous condition claim, the trial court found the City had no general duty to light its streets, and appellant's evidence failed to show he fell within the three-part exception. The court explained appellant demonstrated only it was prudent to light unmarked crosswalks, not that the City had an affirmative legal obligation to do so. The court added appellant offered no evidence how the failure to maintain the streetlight created a "false sense of safety" or that appellant relied on the streetlight functioning.

The trial court also found there were no triable issues of material fact regarding the application of the design immunity defense. The court initially noted the parties did not dispute the first prong of the defense regarding a causal relationship between the City's design and the accident. But as to the second prong concerning discretionary approval of the plan or design, the court concluded, "Article 6, Sec. 22.343 of the [Administrative Code] and Article 2 [of Chapter VI] of the Municipal Code vest the City Engineer with considerable discretion to oversee and approve the construction of streets and sidewalks within the City." On its own motion, the court took judicial notice of the City of Los Angeles's City Charter, Administrative Code, and Municipal Code pursuant to Evidence Code section 452, subdivision (b). The court found appellant presented nothing challenging the City's evidence that its design plan, including the alleged unmarked crosswalk, was

---

[4] It appears appellant does not challenge the summary judgment motion as to his negligence claim against the City as this issue was not addressed in the opposition to summary judgment or in the opening brief on appeal.

approved by a senior transportation engineer. As to the third and final prong regarding substantial evidence of the design's reasonableness, the court concluded the City's experts presented such evidence.

Lastly, as to the City's liability for failure to warn of a dangerous condition, the trial court found appellant provided no evidence demonstrating the location qualified as a concealed trap. The court also determined appellant presented no evidence showing the absence of a warning was a substantial factor in bringing about the injury.

Judgment was entered on September 4, 2023. Appellant timely appealed.

## CONTENTIONS ON APPEAL

Appellant asserts four main arguments. First, appellant contends the City is not entitled to the design immunity defense because it presented no evidence showing the unmarked crosswalk was part of the design it approved. Appellant further argues there is insufficient evidence the City's design was approved by someone with discretionary authority to give such approval or that the design was reasonable. Appellant also maintains the trial court erred by taking judicial notice of the City's Administrative Code and Municipal Code because neither party made such a request and appellant was given no notice.

Second, appellant asserts the City had a duty to light the unmarked crosswalk because functioning streetlights were necessary to provide the illumination required under the City's own street design guide. Appellant posits the failure to maintain streetlights created a false sense of safety to the pedestrian using

the path and the midblock crossing over the underpass was a peculiar condition requiring lighting.

Third, appellant asserts the City was liable for failing to warn of a dangerous condition because the City failed to follow its own street design guide. Appellant maintains there is a triable issue of fact because pedestrian crossing at the location was legal and use thereof was unexpected, requiring signing or markings to warn approaching drivers. Appellant posits the City had constructive notice of the dangerous condition because the physical attributes of the site were not hidden and the City had engaged in various other activity on Corbin Avenue.

Finally, appellant maintains the trial court abused its discretion by continuing trial for a year to allow the City to file its motion for summary judgment. Appellant argues service of the motion to continue trial was defective and the City was not diligent in filing its summary judgment motion.

## DISCUSSION

### I. Standard of review and applicable law

"The standard of review for an order granting a motion for summary judgment is de novo." (*Ryan v. Real Estate of Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 889.) "We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment." (*Ibid*.) "The appellant, however, still 'has the burden of showing error, even if he did not bear the burden in

9

the trial court.'" (*640 Octavia, LLC v. Pieper* (2023) 93 Cal.App.5th 1181, 1189 (*640 Octavia*).)

"Summary judgment is generally appropriate 'if all the papers submitted show that there is no triable issue as to any material fact' and that it 'is entitled to a judgment as a matter of law.'" (*640 Octavia, supra*, 93 Cal.App.5th at pp. 1188–1189.) "[A] plaintiff can seek summary judgment by contending there is 'no defense' to the action, and it proves there is 'no defense' by establishing every element of its causes of action." (*Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, 239–240.) "Once the plaintiff has met that burden, the burden shifts to the defendant to 'set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto.'" (*640 Octavia, supra*, at p. 1189.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

## II. Respondent met its burden on summary judgment and there are no triable issues of material fact

### A. *Appellant's evidence fails to show a triable issue exists as to the design immunity defense*

"Section 830.6, commonly referred to as 'design immunity,' precludes liability for any injury caused by 'the plan or design of . . . , or an improvement to, public property.'" (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 653 (*Tansavatdi*).) "[D]esign immunity requires that a public entity establish three elements: '(1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the

10

plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design.'" (*Ibid.*)

"The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69.) "'"[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested."'" (*Cameron v. State of California* (1972) 7 Cal.3d 318, 326.)

As to the first element regarding causal relationship, it is undisputed there was causation. Appellant contends, however, the City presented no evidence the unmarked crosswalk was part of the design it approved. Under Vehicle Code section 275, subdivision (b), marked crosswalks are defined as "[a]ny portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface." Otherwise, crosswalks are "[t]hat portion of a roadway included within the prolongation or connection of the boundary lines of sidewalks *at intersections* where the intersecting roadways meet at approximately right angles, except the prolongation of such lines from an alley across a street." (Veh. Code, § 275, subd. (a), italics added.) "An 'intersection' is the area embraced within the prolongation of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways, *of two highways* which join one another at approximately right angles or the area within which vehicles

11

traveling upon different *highways* joining at any other angle may come in conflict." (Veh. Code, § 365, italics added.) Thus, an unmarked crosswalk may only exist at an intersection of highways.

Appellant asserts Corbin Avenue intersects a bike path at the collision site. A bike path is not a highway. "A 'bicycle path' or 'bike path' is a Class I bikeway . . . ." (Veh. Code, § 231.5.) "[A] Class I Bikeway does not qualify as a street or highway." (*Farnham v. City of Los Angeles* (1998) 68 Cal.App.4th 1097, 1101.) Class I bikeways "provide a completely separated right-of-way designated for the exclusive use of bicycles and pedestrians with crossflows by motorists minimized." (Sts. & Hy. Code, § 890.4, subd. (a).) "A bicycle is not considered a vehicle. (Veh. Code, §§ 231, 670.) A class I bikeway, by definition, is not open to vehicular traffic." (*Farnham, supra*, at p. 1101.) Accordingly, it cannot be concluded the location at which appellant crossed is a crosswalk as a matter of law because there is no intersection of highways as the bike path is not a highway.

As to the second element concerning discretionary authority, appellant posits the City's experts' declarations do not provide competent evidence showing discretionary authority to approve design plans.[5] "To prove discretionary approval, a public entity 'must show that the design was approved "in advance" of the construction "by the legislative body of the public entity or by some other body or employee exercising discretionary authority to

---

[5] Appellant asserts the trial court sustained his objections to the declarations of the City's experts with respect to this issue. But the court only sustained the objections to the extent the experts provided statements as to the legal effect of the City's Administrative Code, City Charter, and Municipal Code.

give such approval . . . .""" (*Tansavatdi v. City of Rancho Palos Verdes* (2021) 60 Cal.App.5th 423, 435.) "A public entity may prove the decision maker's authority to approve a plan or design by pointing to governing law. [Citation.] Alternatively, the entity may provide testimony by the decision maker or another person familiar with the entity's approval process." (*Id.* at pp. 435–436.)

The City presented the declaration of Brian Gallagher, the principal transportation engineer for the District Operations Bureau at the Los Angeles Department of Transportation (LADOT). Gallagher authenticated the design plans for Corbin Avenue and provided statements of the senior transportation engineers who approved the plans. Gallagher indicated a senior transportation engineer or someone with a higher level of authority had discretionary authority under LADOT's manual of policies and procedures as well as its custom and practice. Gallagher attested a senior transportation engineer would not have approved the plan had the traffic control plan not met appropriate engineering standards.

In addition, the Los Angeles Administrative Code section 22.343 provides "[t]he City Engineer shall have all the powers and perform all the duties imposed upon the City Engineer by the Charter, the ordinances of the City, the general laws of the State and orders of the Board of Public Works." Municipal Code section 62.105, subdivision (a) states in relevant part: "No person shall lay, construct, reconstruct or repair in any street or in, over or through any property or right of way owned by or under the control of the City, any curb, sidewalk, gutter, driveway, approach, roadway surface, pavement, sanitary sewer, sewage works, storm drain, culvert, stairway, retaining wall or similar structure, building or improvement, or perform any grading or

13

filling, . . . without first obtaining approval of plans and specifications and the lines and grades therefor from the City Engineer."

Accordingly, Gallagher's declaration and the governing law demonstrate the design plans for Corbin Avenue were approved by employees exercising discretionary authority to give such approval. Gallagher's declaration shows the City's senior transportation engineers approved the design plans for the location and exercised discretion in determining the plans met appropriate engineering standards. Gallagher's declaration also demonstrates the engineers exercised discretion pursuant to the LADOT's manual of policies and procedures and its custom and practice. Further, the City's Administrative Code and Municipal Code establish the engineers were authorized to exercise discretion in approving the plans because their approval was required before construction or repair of a roadway, sidewalk, or similar structure.

Appellant identifies no evidence directly challenging Gallagher's foregoing statements. Instead, appellant argues the City's Administrative Code, City Charter, and Municipal Code only vest the City Engineer with discretion to oversee construction of streets and sidewalks, not discretion to approve the design thereof. As discussed above, however, this argument lacks merit because the abovementioned provisions clearly demonstrate the City Engineer's approval of the design plan was required before construction or repair of a roadway, sidewalk, or similar structure. (L.A. Admin. Code, § 22.343; L.A. Mun. Code, § 62.105, subd. (a).)

Appellant also contends the trial court improperly, without notice to appellant, took judicial notice of the City's

14

Administrative Code, City Charter, and Municipal Code on its own motion. "[T]he court may take judicial notice on its own volition." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752.) While there was no opportunity to object to the judicial notice, appellant fails to show reversible error based on the matters being improperly judicially noticed. "The court may take judicial notice of a city charter or municipal code." (*The Kennedy Com. v. City of Huntington Beach* (2017) 16 Cal.App.5th 841, 852.) The matters the court judicially noticed were clearly relevant to this issue and the parties' contentions thereto. Thus, the court did not improperly take judicial notice of the City's Administrative Code, City Charter, or Municipal Code. Appellant therefore fails to show reversible error.

Finally, we conclude there are no triable issues as to the third element regarding substantial evidence of the design plan's reasonableness. "Resolution of the third element . . . is a matter for the courts, not the jury, to decide." (*Tansavatdi, supra*, 14 Cal.5th at p. 653.) "Generally, a civil engineer's opinion regarding reasonableness is substantial evidence sufficient to satisfy this element. [Citation.] Approval of the plan by competent professionals can, in and of itself, constitute substantial evidence of reasonableness. [Citation.] That a plaintiff's expert may disagree does not create a triable issue of fact." (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 941 (*Grenier*).) "The statute does not require that property be perfectly designed, only that it be given a design which is reasonable under the circumstances. By deciding on a 'reasonableness' standard, the Legislature intended that government officials be given extensive leeway in their decisions concerning public property." (*Ramirez v. City of Redondo Beach* (1987) 192 Cal.App.3d 515, 525.)

15

Here, the City's experts support and explain why the design plans for the location are reasonable. Traffic engineering expert, Rock Miller, attested to the reasonableness of the roadway design features as they met or exceeded prevailing design standards and guidelines in use at the time of its construction. Miller opined the design is also generally appropriate and consistent with roadway standards in use today. Miller added there is no notice of changed conditions or collision history that would call into question the appropriateness of the plans' approval. Miller indicated the design of the roadway and traffic controls, including geometric plans for signing and striping, conform to the City's applicable standards and the California Manual on Uniform Traffic Control Devices. Miller concluded the design is an excellent, detailed engineering design and is beyond reasonable. In addition, Gallagher provided supporting statements that the LADOT's work orders implementing the design and the LADOT staff approving them are reasonable.

The fact the design plans were approved by competent engineers also establishes the plans are reasonable. (See *Grenier, supra*, 57 Cal.App.4th at p. 941.) Appellant fails to show the City's experts' declarations are not competent evidence. While appellant raises his own expert's declaration and attempts to identify weaknesses in the City's experts' statements, this is insufficient to establish a triable issue as to this element of the defense. Appellant reiterates the approved design does not include the pedestrian crossing, but this assertion lacks merit since, as discussed above, the location at which appellant crossed is not a crosswalk. The City's engineers needed only to give an opinion as to the design plans' reasonableness. The City's experts

16

provided statements demonstrating the area's plans are reasonable under the circumstances. Accordingly, there are no triable issues here because the City presented substantial evidence supporting the reasonableness of Corbin Avenue's design.

In short, we conclude there are no triable issues of material fact as to the design immunity defense. The parties do not dispute the first element of the defense regarding causal relationship. Appellant contends the design plans do not include the pedestrian crossing, but the area at which appellant crossed is not a crosswalk, as a matter of law, as there is no intersection of highways. As to the second element, the City's transportation engineering expert and the governing law show Corbin Avenue's design plans were approved by employees who were properly exercising discretionary authority to give such approval. Appellant asserts the trial court erroneously took judicial notice of the governing law on this issue, but appellant fails to show he was prejudiced. As to the third element, the City's engineering experts provided statements demonstrating the area's plans to be reasonable under the circumstances, which is the only requirement on summary judgment for this element.

### B. *Appellant's evidence fails to show a triable issue exists as to the City's liability for failing to maintain lights*

"[T]he general rule is that, "'In the absence of a statutory or charter provision to the contrary, it is generally held that a municipality is under no duty to light its streets even though it is given the power to do so, and hence, that its failure to light them is not actionable negligence, and will not render it liable in damages to a traveler who is injured solely by reason thereof. . . .

17

A duty to light, and the consequent liability for failure to do so, may, however, arise from some peculiar condition rendering lighting necessary in order to make the streets safe for travel."'" (*Plattner v. City of Riverside* (1999) 69 Cal.App.4th 1441, 1444 (*Plattner*).)

To establish liability for inoperable streetlights, the claimant must show (1) the installation of the streetlight was necessary to obviate a dangerous condition; (2) the failure to maintain an installed streetlight created a risk greater than the risk created by the total absence of a streetlight; and (3) the injured party relied on the operation of the streetlight, forgoing other protective actions, e.g., a pedestrian chooses a particular route home in reliance on the available streetlighting when he or she would have taken another route or means of transportation in the absence of lighting. (See *White v. Southern Cal. Edison Co.* (1994) 25 Cal.App.4th 442, 451–452 .)

Here, appellant does not dispute the City generally has no duty to light its streets. Appellant argues, however, evidence was presented establishing the exception set forth in *White*. We disagree.

No evidence was presented demonstrating appellant relied on the streetlights functioning in the area, foregoing other protective actions. "This exception to the general rule of nonliability anticipates a pedestrian who has taken a particular route based on the belief the route is lighted and does not discover otherwise until it is too late to take a different route." (*Plattner, supra*, 69 Cal.App.4th at p. 1446.) Appellant did not submit his own declaration to support his case. Indeed, appellant provided no statements from anyone with personal knowledge of

18

the actual events of the accident other than the driver, whose statements were used only to establish his driving speed.

There is no evidence appellant chose the route in reliance on the available streetlighting. Further, appellant failed to submit evidence he would have taken a different route or means of transportation had he known the streetlights were not functioning that night. No evidence was presented showing it was "too late" for appellant to turn around and cross underneath the overpass once he saw there was no lighting. Accordingly, there is no evidence appellant forewent protective actions in reliance on functioning streetlights.

Because appellant failed to present evidence as to an essential element of this exception, we need not consider the remaining elements involving the necessity and relative risk of the streetlights. (See Code Civ. Proc., § 437c, subd. (p)(2) ["A defendant . . . has met that party's burden of showing that a cause of action has no merit if the party has shown . . . that there is a complete defense to the cause of action. . . . [T]he burden [then] shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists . . . ."].) As discussed above, the City generally has no duty to light its streets. (See *Plattner, supra*, 69 Cal.App.4th at p. 1444.) While there is an exception to this general rule as discussed in *White*, appellant did not provide evidence showing each element of the exception. There is no triable issue of material fact as to the City's liability for failure to light the area in question because appellant failed to show he chose the particular route in reliance on the streetlights functioning, forgoing other protective actions.

### C. *Appellant's evidence fails to show a triable issue exists as to the City's liability for failing to warn of a dangerous condition*

"[D]esign immunity does not categorically preclude failure to warn claims that involve a discretionarily approved element of a roadway." (*Tansavatdi, supra*, 14 Cal.5th at p. 647.) "[W]here the state is immune from liability for injuries caused by a dangerous condition of its property because the dangerous condition was created as a result of a plan or design which conferred immunity under section 830.6, the state may nevertheless be liable for failure to warn of this dangerous condition where the failure to warn is negligent and is an independent, separate, concurring cause of the accident." (*Cameron v. State of California, supra*, 7 Cal.3d at p. 329.) However, "such claims may be subject to a separate, more limited form of statutory immunity: Signage immunity set forth in section 830.8. That provision precludes government liability for failing to provide 'traffic or warning signals' (§ 830.8), except when 'necessary to warn of a dangerous condition which would not be reasonably apparent to, and would not have been anticipated by, a person using the highway with due care' [citation]." (*Tansavatdi, supra*, at p. 660.)

"[S]ection 835 sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property." (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.) "'To establish liability under section 835, a plaintiff must show: "(1) 'that the property was in a dangerous condition at the time of the injury'; (2) 'that the injury was proximately caused by the dangerous condition'; (3) 'that the dangerous condition created a reasonably foreseeable risk of the

kind of injury which was incurred'; and (4) either (a) that a public employee negligently or wrongfully 'created the dangerous condition' or (b) that '[the] public entity had actual or constructive notice of the dangerous condition under section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.'"'" (*Kabat v. Department of Transportation* (2024) 107 Cal.App.5th 651, 660.)

"[W]hile *Cameron* generally permits claims for failure to warn of a dangerous traffic condition that is subject to design immunity, a plaintiff pursuing such a claim must nonetheless prove various elements that are not present when pursuing a claim alleging a public entity *created* that dangerous condition: (1) the public entity had actual or constructive notice that the approved design resulted in a dangerous condition (see §§ 835, subd. (b), 835.2 [defining 'notice' within the meaning of § 835, subd. (b)]); (2) the dangerous condition qualified as a concealed trap, i.e., 'would not [have been] reasonably apparent to, and would not have been anticipated by, a person exercising due care' (§ 830.8); and (3) the absence of a warning was a substantial factor in bringing about the injury." (*Tansavatdi, supra*, 14 Cal.5th at pp. 661–662.)

Appellant contends there is a triable issue as to this claim because the collision site required signing or markings since the pedestrian crossing was legal and use thereof was unexpected. Appellant maintains the evidence shows the City had constructive notice of the dangerous condition.

But no evidence was submitted showing the absence of warnings of the unmarked crosswalk was a substantial factor in bringing about his injury. To show lack of causation, the City presented a declaration from its traffic engineering expert,

21

Miller. Miller concluded with reasonable certainty that, based on his inspection of the collision site and documents in the case, the physical condition of Corbin Avenue and the traffic controls in place in the vicinity did not cause or contribute to the accident. Thus, the City met its burden by providing evidence challenging this element of the claim.

In opposition, appellant provided a declaration from traffic engineering expert, Mike Blankenship, to challenge Miller's statements. Blankenship opined the crossing location should have had signing and markings in place to warn approaching drivers and to provide visibility for pedestrians. But Blankenship provided no opinion as to causation. Blankenship concluded only that the lack of appropriate traffic control and lighting in the area created a dangerous condition without adequate warnings to pedestrians and motorists. Blankenship offered no opinion that the conditions at the crossing location was a substantial factor in bringing about appellant's injury. The mere fact a dangerous condition was created does not show the condition was a substantial factor in bringing about appellant's harm.[6]

_____

[6] In reply appellant posits there is evidence of causation for his failure-to-warn claim because it can reasonably be inferred from the driver's statements to the police that the darkness at the location hampered his vision when he struck appellant. However, the lack of lighting at the collision site goes to the issue of the City's liability for failure to maintain streetlighting, of which there are no triable issues as discussed herein. Further, we note appellant never cited the driver's statements to the police when responding to the City's separate statement of undisputed material facts on this issue. (See *Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 901 ["'Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement

Since an essential element of this claim is unsupported, appellant fails to show a triable issue of material fact exists here.[7] No evidence was submitted challenging the City's evidence that the collision site's condition and traffic controls did not cause or contribute to appellant's injury. Accordingly, we need not consider the remaining issues regarding whether the City had notice the approved design resulted in a dangerous condition.[8]

---

of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion.'"].)

[7] Appellant asserts the trial court erred in shifting the burden on this issue because the City never raised the "concealed trap" and causation elements of the claim. While the City did not raise the "concealed trap" element, causation was raised in the notice of motion and the corresponding separate statement of undisputed material facts. Appellant responded to the City's separate statement and supporting evidence on this issue. Accordingly, we conclude the court properly considered the element of causation and the evidence presented thereto. (See *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1210 ["The requirement of a separate statement from the moving party and a responding statement from the party opposing summary judgment serves two functions: to give the parties notice of the material facts at issue in the motion and to permit the trial court to focus on whether those facts are truly undisputed."].)

[8] The City also argues appellant forfeited his failure-to-warn claim because he did not address the trial court's conclusions as to the "concealed trap" and causation elements. Further, the City posits the the Government Claims Act (Gov. Code, § 810 et seq.) bars appellant's unmarked-crosswalk and failure-to-warn claims because his government tort claims alleged no facts about these issues, which the City requests for the first time on appeal that this court consider. We conclude these issues need not be

23

### III. The trial court did not abuse its discretion by continuing trial to allow the City to file its summary judgment motion

Finally, appellant argues the trial court abused its discretion by granting the City a one-year continuance to allow it to file its motion for summary judgment. We disagree.

"An order granting or denying a continuance is reviewed under the abuse of discretion standard. [Citation.] Such decisions will be upheld unless a clear abuse is shown, amounting to a miscarriage of justice." (*Bussard v. Department of Motor Vehicles* (2008) 164 Cal.App.4th 858, 863.) "'"On an appeal from the judgment (the order itself being nonappealable) it is practically impossible to show reversible error in the *granting* of a continuance."'" (*Id.* at p. 863, fn. 1.)

We conclude the trial court acted reasonably within its discretion by continuing the trial date to allow the City to file its summary judgment motion. The record shows the earliest hearing date for the City's motion, June 29, 2023, was nearly a year after the July 9, 2022 trial date. The City sought to advance the hearing date but was denied under the court's standing order. The standing order indicated the personal injury courts had no capacity to shorten time for hearings due to their fully booked motion calendars. The standing order also directed moving parties seeking relief to reserve the earliest available hearing date, even if it was after the trial date, and to file a motion to continue trial. Appellant argues the City's service of its motion for continuance was defective. But appellant fails to show he was

considered here because we have determined appellant has not established a triable issue of material fact as to his causes of action.

24

prejudiced as he timely opposed and fully briefed the merits of the motion. (See *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697 ["'It is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of motion. [Citations.] This rule applies even when no notice was given at all.'"].)

Calendar management is within the trial court's province. (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1084–1085.) Given the court's highly congested calendar, there was good cause to require a continuance rather than allow the shortening of time to hear the motion. A trial court must have the discretion to determine how to fairly and properly schedule the plethora of matters it faces. The standing order applied to everyone seeking a hearing date. Appellant fails to show the trial continuance prejudiced his opposition to the summary judgment motion. (See *Hoyt v. Los Angeles Metropolitan Transit Authority* (1962) 210 Cal.App.2d 534, 538–539 ["Error in and of itself does not necessarily require the reversal of a judgment. Prejudice resulting from the error must be shown and that such prejudicial error under the circumstances justifies a reversal."].) Nothing shows appellant was unable to obtain crucial evidence or there were any other circumstances impeding him from effectively presenting his opposition to summary judgment due to the continuance.

Indeed, *Sentry Ins. Co. v. Superior Court* (1989) 207 Cal.App.3d 526, 529 (*Sentry*), shows a trial court may not refuse to hear a summary judgment motion filed within the applicable time limits. The trial court in that case was directed to continue trial and allow the motion to be heard. (*Id*. at p. 530.) The facts in

*Sentry* are similar to those here. The petitioners in that case attempted to file a summary judgment motion, but the first available hearing date was after the deadline for hearing the motion. (*Id*. at p. 528.) The court denied the petitioners' attempt to shorten the time to hear the motion and their subsequent motion to continue trial. (*Id*. at pp. 528–529.) The petitioners filed a petition for extraordinary relief with the Court of Appeal, and the trial court was directed to continue the trial date and hear the summary judgment motion. (*Id*. at pp. 528, 530.)

Appellant maintains the circumstances here are distinguishable because the City had not filed its summary judgment motion at the time it sought a hearing date and was not diligent. But the petitioners in *Sentry* also had not filed their motion, since a writ was issued in that case directing the trial court *to file* and hear the motion. (See *Sentry, supra*, 207 Cal.App.3d at pp. 528, 530.) And as discussed above, appellant ultimately does not show he was prejudiced by the continuance. Accordingly, we conclude the court here did not abuse its discretion in granting the motion to continue trial.

### DISPOSITION

The September 4, 2023 judgment is affirmed. Each side is to bear its own costs of appeal.

CHAVEZ, J.

We concur:

LUI, P. J.                                    RICHARDSON, J.

26